# IN THE U.S. DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

RUTH ANN PLAINTIFF, as Guardian of )
JONATHAN JAMES BREWSTER WARNER )
                                   )

    **Plaintiff** )

                                   )

**v.** ) **Case No. 6:19CV00055**

                                   )

**CENTRA HEALTH, INC., et al.** )

                                   )

    **Defendants** )

## DEFENDANT CENTRA HEALTH, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS COUNTS 4, 5 AND 6 OF PLAINTIFF'S COMPLAINT

Elizabeth Guilbert Perrow, Esq. (VSB No. 42820)
Daniel T. Sarrell, Esq. (VSB No. 77707)
Joshua F. P. Long, Esq. (VSB No. 65684)
Joshua R. Treece, Esq. (VSB No. 79149)
J. Walton Milam III, Esq. (VSB No. 89406)
WOODS ROGERS PLC
P. O. Box 14125
Roanoke, VA 24038-4125
Phone: (540) 983-7600
Fax: (540) 983-7711
eperrow@woodsrogers.com
dsarrell@woodsrogers.com
jlong@woodsrogers.com
jtreece@woodsrogers.com
wmilam@woodsrogers.com

*Counsel for Defendant Centra Health, Inc.*

Dated: November 18, 2019

TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... iv

I.     FACTS AND ALLEGATIONS........................................................................................1

II.    PROCEDURAL HISTORY...............................................................................................7

III.   ARGUMENT.....................................................................................................................9

       A.    Standard of Review...................................................................................................9

       B.    Count 4 (*Monell*-style Section 1983) fails to plausibly allege a
             policy or custom.....................................................................................................10

             i)     Only official policies or customs give rise to *Monell* claims....................13

             ii)    Plaintiff ails to articulate an official policy or custom...............................15

             iii)   The "examples" listed by Plaintiff do not give rise to a *de
                    facto* policy................................................................................................16

                    a)    Post-incidents events don't count ..................................................16

                    b)    There is no causal link between the incidents and
                          the alleged deprivations .................................................................17

                    c)    The examples are insufficient in duration and
                          frequency.........................................................................................18

             iv)    Count 4 should be dismissed with prejudice..............................................19

       C.    Count 5 (Battery) is implausible and contradicted by the PEC
             video.......................................................................................................................20

       D.    Count 6 (Negligence) is implausible and contradicted by the
             appointment order ..................................................................................................24

             i)     Plaintiff's negligence theories are contrary to Virginia law ......................25

                    a)    Plaintiff has failed to allege negligent hiring or
                          retention ..........................................................................................25

                    b)    Plaintiff has failed to allege negligent entrustment........................26

          c)     Virginia does not recognize negligent supervision or training ........................................................................................27

          d)     Virginia does not recognize negligent failure to adopt a policy ..................................................................................28

    ii)    Centra's alleged failings did not proximately cause Plaintiff's injuries......................................................................................28

    iii)   Plaintiff's allegations do not rise to the level of gross negligence ..................................................................................................30

IV.    CONCLUSION.............................................................................................30

CERTIFICATE OF SERVICE ..................................................................................31

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  129 S.Ct. 1937 (2009)..................................................................................................9

*Austin v. Paramount Parks, Inc.*,
  195 F.3d 715 (4th Cir. 1999) .....................................................................................13

*Balderson v. Robertson*,
  125 S.E.2d 180 (Va. 1962)..........................................................................................24

*Banks v. City of Richmond*,
  232 Va. 130, 348 S.E.2d 280 (1986)...........................................................................29

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................................................9

*Board of County Comm'rs v. Brown*,
  520 U.S. 397 (1997)....................................................................................................14

*Brondas v. Corizon Health, Inc.*,
  2014 WL 5393529 (W.D. Va. 2014) ..........................................................................10

*Brondas v. Corizon Health, Inc.*,
  2015 WL 3491130 (W.D. Va. 2015) ..........................................................................13

*Carey v. Piphus*,
  435 U.S. 247 (1978)....................................................................................................13

*Carter v. Morris*,
  164 F.3d 215 (4th Cir. 1999) .........................................................................11, 14, 18

*Chesapeake & Potomac Telephone Co. of Va. v. Dowdy*,
  235 Va. 55, 365 S.E.2d 751 (1988).............................................................................27

*City of Canton v. Harris*,
  489 U.S. 378 (1989).............................................................................................14, 17

*Cleaves-McClellan v. Shah*,
  93 Va. Cir. 459 (Norfolk 2016) ..................................................................................27

*Colby v. Boyden*,
  241 Va. 125, 400 S.E. 2d 184 (1994)..........................................................................30

*Cordova v Aragon*,
  569 F.3d 1183 (10th Cir. 2009) ..................................................................................16

Case 6:19-cv-00055-NKM-RSB   Document 24   Filed 11/18/19   Page 4 of 39   Pageid#: 312

*Denby v. Davis*,
    212 Va. 836, 188 S.E. 2d 226 (1972)........................................................................................26

*Fayetteville Investors v. Commercial Builders, Inc.*,
    936 F.2d 1462 (4th Cir. 1991) ...............................................................................................90

*Frazier v. City of Norfolk*,
    234 Va. 388, 362 S.E.2d 688 (1987)........................................................................................30

*Godlewski v. Affiliated Computer Servs., Inc.*,
    210 F.R.D. 571 (E.D. Va. 2002) ...............................................................................................1

*Graham v. Connor*,
    490 U.S. 386 (1989)................................................................................................................22

*Gray v. Roads*,
    55 Va. Cir. 362 (Charlottesville Cir. 2001) .............................................................................26

*Greensboro Professional Fire Fighters Ass'n, Local 3157 v. City of Greensboro*,
    64 F.3d 962 (4th Cir. 1995) ....................................................................................................11

*Hack v Nester*,
    241 Va. 499, 404 S.E. 2d 42 (1990).........................................................................................27

*Harrington v. Sprint Nextel Corp.*,
    2008 WL 2228524 (E.D. Va. 2008)...........................................................................................1

*Hawthorne v. Lavinder*,
    72 Va. Cir. 375 (Roanoke County 2006) .................................................................................28

*Holley v. CVS Caremark Corp.*,
    2016 U.S. Dist. LEXIS 106228 (W.D. Va. 2016) .....................................................................1

*Hubbard v. Murray*,
    173 Va. 448, 3 S.E.2d 397 (1939)............................................................................................29

*Interim Pers. of Cent. Va. v. Messer*,
    263 Va. 435, 559 S.E. 2d 704 (2002).................................................................................24, 25

*Jarvis v. City of Alexandria*,
    2017 WL 2537038 (E.D. Va. 2017) ...........................................................................................9

*Jenkins v. Woody*,
    2015 WL 8665457 (E.D. Va. 2015)..............................................................................14, 15, 16

*Koffman v. Garnett*,
    265 Va. 12 (2003) ..................................................................................................................19

*Lytle v. Doyle*,
   326 F.3d 463 (4th Cir. 2003) ...........................................................................................11, 14

*Miller v. Pacific Shore Funding*,
   224 F.Supp.2d 977 (D. Md. 2002)...........................................................................................9

*Milligan v. City of Newport News*,
   743 F.2d 227 (4th Cir. 1984) .................................................................................................12

*Milstead v. Kibler*,
   243 F.3d 157 (4th Cir. 2001) .................................................................................................22

*Monell v. Department of Social Services*,
   436 U.S. 658 (1978)........................................................................................................*Passim*

*Moody v. City of Newport News, Va.*,
   93 F. Supp. 3d 516 (E.D. Va. 2015) ......................................................................................16

*Newhard v. Borders*,
   649 F. Supp. 2d 440 (W.D.Va. 2009) (J. Moon) .......................................................15, 18, 19

*Owens v. Children's Hosp. of the King's Daughters, Inc.*,
   45 Va. Cir. 97 (Norfolk 1997) ...............................................................................................28

*Parrish v. Am. Airlines, Inc.*,
   97 Va. Cir. 271, 2017 WL 9917197 (Norfolk Dec. 12, 2017)................................................27

*Porter v. Woods*,
   96 Va. Cir. 280, 2017 WL 10966679 (Norfolk Aug. 2017) ...................................................27

*Pullen v. Nickens*,
   226 Va. 342, 310 S.E.2d 452 (1983)......................................................................................28

*Reaves v. Dane*,
   2016 U.S. Dist. LEXIS 168521 (W.D.N.C. 2016)..................................................................13

*Rose v. Centra Health, Inc.*,
   2017 WL 3392494 (W.D. Va. 2017) .............................................................................. *passim*

*Russell ex rel. Russell v. Wright*,
   916 F. Supp. 2d 629 (W.D. Va. 2013) ...................................................................................22

*Semple v. City of Moundsville*,
   195 F.3d 708 (4th Cir. 1999) .................................................................................................11

*Sigman v. Town of Chapel Hill*,
   161 F.3d 782 (4th Cir. 1998) .................................................................................................22

*Spell v. McDaniel,*
 824 F.2d 1380 (4th Cir. 1987) ...........................................................................................11, 14

*Spiller v. City of Texas City, Police Dept.,*
 130 F.3d 162 (5th Cir. 1997) ...............................................................................................12

*Stevens v. Byrd,*
 49 Va. Cir. 410 (Dickenson Cir. 1999).................................................................................28

*Switzer v. Thomas,*
 2013 U.S. Dist. LEXIS 25755 (W.D. Va. 2013) ....................................................................9

*Tatum v. Shoemaker,*
 2012 U.S. Dist. LEXIS 35475 (W.D. Va. 2012) ..................................................................21

*Taubman Realty Group Ltd. P'ship v. Mineta,*
 320 F.3d 475 (4th Cir. 2003) .................................................................................................9

*Taylor v O'Neil,*
 92 Va. Cir. 303 (Norfolk 2016) ...........................................................................................28

*Thompson v. City of Danville,*
 2011 WL 2174536 (W.D. Va. 2011) ....................................................................................22

*Tomasello v. Fairfax Cty.,*
 2016 WL 165708 (E.D. Va. 2016).........................................................................................11

*Town of Big Stone Gap v. Johnson,*
 184 Va. 375, 35 S.E.2d 71 (1943)..........................................................................................30

*Turner v. Lotts,*
 244 Va. 554, 422 S.E. 2d 765 (1992).....................................................................................26

*United Black Firefighters v. Hirst,*
 604 F.2d 844 (4th Cir. 1979) ..................................................................................................9

*United States v. Day,*
 591 F.3d 679 (4th Cir. 2010) .................................................................................................13

*United States v. Rosen,*
 487 F. Supp. 2d 721 (E.D. Va. 2007) .....................................................................................9

*Unus v. Kane,*
 565 F.3d 103 (4th Cir. 2009) ......................................................................................21, 22, 23

*Veney v. Wyche,*
 293 F.3d 726 (4th Cir. 2002) ..................................................................................................9

Case 6:19-cv-00055-NKM-RSB   Document 24   Filed 11/18/19   Page 7 of 39   Pageid#: 315

*Virginia Ry. & Power Co. v. Godsey*,
  117 Va. 167, 83 S.E. 1072 (1915)............................................................................................28

*Warner v Doucette*,
  2019 WL 3432744 (W.D. Va. 2019) ..................................................................................9, 19

*Williams v. City of Charlottesville*,
  1996 WL 335377 (W.D. Va. 1996) ........................................................................................12

*Wilson v. Flynn*,
  429 F.3d 465 (4th Cir. 2005) .................................................................................................21

*Wyatt v. Chesapeake & Potomac Tel. Co.*,
  158 Va. 470, 163 S.E. 370 (1932)..........................................................................................29

*Wyatt v. Cole*,
  504 U.S. 158 (1992)................................................................................................................13

**Statutes**

42 U.S.C. § 1983................................................................................................................. *passim*

Va. Code § 8.01-265 .....................................................................................................................7

Va. Code § 8.01-581.17 .................................................................................................................8

Defendant Centra Health, Inc. ("Centra"), by counsel, files this Memorandum in Support of its Motion to Dismiss Counts 4, 5 and 6 of the Complaint of Plaintiff Ruth Ann Warner, as Guardian of Jonathan James Brewster Warner ("Plaintiff").[1] As set forth below, Count 4 should be dismissed because Plaintiff fails to plausibly allege a policy or custom sufficient to hold Centra liable under 42 U.S.C. § 1983. Counts 5 and 6 should be dismissed because Plaintiff has not plausibly alleged battery or negligence, his legal theories are contrary to Virginia law, and his allegations and the PEC Video and Armed SCOP Order incorporated in his Complaint demonstrate he cannot plausibly state a claim for relief.

## I.     FACTUAL ALLEGATIONS

On January 11, 2016, Plaintiff violently attacked and endangered patients and staff at Centra's Psychiatric Emergency Center ("PEC") at Lynchburg General Hospital ("LGH"). Compl. (Dkt No. 1) at ¶¶ 136-47. Plaintiff first attacked Centra security officer Wes Gillespie ("Gillespie") and attempted to steal his pistol. *Id.* ¶¶ 137-140. In response, Gillespie drew his taser, but Plaintiff overpowered Gillespie, stole his taser, and used the stolen taser to fire upon and hit Centra mental health safety support officer Jason Bryan ("Bryan"). *Id.* at ¶¶ 141-42. Plaintiff then turned his attention back to Gillespie, aimed the stolen taser at Gillespie, and charged toward Gillespie who was only a few feet away with his firearm. *Id.* at ¶ 143.

At the time of these events, Plaintiff is alleged to have been "unstable and physically very strong, " (Compl. at ¶ 57), "in a fully psychotic state which caused him to be unable to control his actions," (*id*. at ¶ 119), and "paranoid" with "delusional thought[s], violent outbursts, and irrational decision-making" (*id*. at ¶ 36).

---

[1] The filing of this partial motion to dismiss suspends the time to file an Answer for all claims. *Holley v. CVS Caremark Corp.*, 2016 U.S. Dist. LEXIS 106228, at *2-3 (W.D. Va. 2016); *Godlewski v. Affiliated Computer Servs., Inc.*, 210 F.R.D. 571, 572 (E.D. Va. 2002); *Harrington v. Sprint Nextel Corp.*, 2008 WL 2228524, at *12 (E.D. Va. 2008).

1

As Gillespie backed away, Plaintiff continued charging toward Gillespie with the taser. *Id.* Acting in self-defense and in defense of others to protect himself and Centra's patients and staff, Gillespie fired on Plaintiff in "rapid succession" with four shots in less than five seconds. *Id.*

"A security camera recorded [Plaintiff] in the PEC from the time of his arrival until Gillespie shot him and thereafter" ("PEC Video"). *Id.* at ¶ 147.[2] Snapshots appear below:

**Plaintiff attacks Gillespie and attempts to steal his pistol.**
Complaint at ¶¶ 137-140; **Exhibit 1** at 26:18



**Gillespie draws his taser. Plaintiff steals Gillespie's taser.**

Complaint at ¶141; **Exhibit 1** at 26:47



---

[2] The PEC Video, which is incorporated by reference in Paragraph 147 of the Complaint, is attached hereto as **Exhibits 1-2**.

2

**Plaintiff fires the stolen taser at Bryan.**
Complaint at ¶142; **Exhibit 1** at 26:51



**Plaintiff attacks Bryan with the stolen taser.**
Complaint at ¶142; **Exhibit 2** at 0:10



3

**Plaintiff exits patient room, aims stolen taser at Gillespie, and charges toward Gillespie.**
Complaint at ¶143; **Exhibit 1** at 26:54



**Gillespie backs away from the second assault.**
**Plaintiff continues charging at Gillespie.**
*Complaint* at ¶¶ 144-145; **Exhibit 1** at 26:54-58





4

The PEC Video provides incontrovertible evidence that Gillespie acted reasonably under the circumstances in self-defense and in defense of others in addressing the threat posed by Plaintiff who was armed with a taser, wanted Gillespie's firearm, and only seconds earlier had overpowered Gillespie to take his taser. Compl. ¶ 147; **Exs. 1-2**.

At the time of the incident on January 11, 2016, Gillespie had extensive experience working with firearms both as a police officer and as a security officer in the hospital setting. Gillespie had worked as a Centra security officer for over five years, since May 10, 2010. Compl. at ¶ 88. Before that, Gillespie worked as a police officer for Lynchburg Police Department for five years and as a security officer for two years. *Id.* at ¶¶ 91, 93.

In January 2011, the Lynchburg Circuit Court appointed Gillespie as a Special Conservator of the Peace ("SCOP"). Compl. at ¶ 96. On August 29, 2013, the Lynchburg Circuit Court entered an Order reappointing Gillespie as a SCOP, and authorized him to carry a firearm on "properties currently owned or leased by [Centra], and any properties acquired or leased after the date of this Order," including the PEC, and the Court found that "Gillespie has met the registration and training requirements," and "Gillespie is the proper person to perform to perform the duties of [and Armed SCOP]" at Centra (the "Armed SCOP Order"). *Id.* at ¶¶ 97-101.[3] The Armed SCOP Order was effective for a 4-year period through August 29, 2017, and authorized Gillespie to "affect arrests. . . using up to the same amount of force as would be allowed to a law-enforcement officer employed by the Commonwealth." *Id.* at ¶¶ 96-102. Thus, the Armed SCOP Order provides binding findings and rulings from the Lynchburg Circuit Court that Gillespie was properly trained and appointed as an Armed SCOP, and was authorized by Court Order to carry and use his pistol in the PEC on January 11, 2016. *See id.* at ¶¶ 96-101; **Ex. 3**.

---

[3] The Armed SCOP Order, which is referenced in Paragraphs 100 through 102 of the Complaint, is attached hereto as **Exhibit 3**.

5

The combination of the Armed SCOP Order authorizing Gillespie to carry and use his pistol in the PEC on January 11, 2016 (**Ex. 3**) and the PEC Video showing Gillespie's actions were unquestionably reasonable and justified under the circumstances and in self-defense and in defense of others (**Exs. 1-2**) preclude Plaintiff from stating a plausible claim and necessitate dismissal of Counts 4, 5, and 6.

In an attempt to escape or distract from this inconvenient truth, Plaintiff filed a meandering 36 page 239 paragraph Complaint alleging phantom Constitutional violations, non-existent policies and customs, and purported factual allegations that have nothing to do with the incident. Plaintiff, for example, devotes five pages of the Complaint to discussing the formation, design and set up of the PEC in 2015, and only two pages to the incident. Compare ¶¶ 12-32 with 136-147.

Plaintiff attempts to disparage Gillespie claiming he was unqualified to serve because he was too old ("Gillespie was less than a week away from his 68th birthday"), and too fat ("Gillespie weighed at least 225 pounds"), and "does not have a college degree." Compl. at ¶¶ 89, 94, 103-104. Plaintiff also claims Gillespie had not received sufficient training. *Id.* at ¶ 111. Plaintiff then contends Gillespie was "an individual with no business carrying a firearm around" "in a place where no gun should have been." *Id.* at ¶ 1. The problem for Plaintiff is the Armed SCOP Order and judicial findings of the Lynchburg Circuit Court that are incorporated in his Complaint contradict and refute his contention. *Id.* at ¶¶ 96-101; **Ex. 3**. The Lynchburg Circuit Court found Gillespie to be fully qualified, properly trained, with the requisite experience, and only then appointed him as an Armed SCOP, and authorized him to carry and use his pistol on Centra property, including in the PEC on January 11, 2016. *Id.* Further, the Court was aware of and even cited Gillespie's date of birth and weight in the Armed SCOP Order when finding Gillespie is "the proper person to perform the duties of Special Conservator of the Peace" at Centra. **Ex. 3**.

6

Plaintiff then incredibly accuses Gillespie of having "perpetrated" a "conscious-shocking, callous[], inept[], and outright intentional wrongdoing." Compl. at ¶ 1. Yet his own allegations and the PEC Video confirm that Gillespie acted reasonably under the circumstances and was justified in shooting Plaintiff in self-defense and in defense of others. *Id.* at ¶¶ 136-47; **Exs. 1-2**. Conclusory adjectives from Plaintiff simply cannot change what is shown on the PEC Video: a reasonable and justified shooting to protect Centra's patients and staff. **Exs. 1-2**.

## II.     PROCEDURAL HISTORY

This case has a tortured procedural history due to Plaintiff's filing of four lawsuits against Centra and others in multiple courts throughout Virginia asserting overlapping and contradictory claims arising out of this same incident at the PEC on January 11, 2016.

On August 8, 2017, Plaintiff filed Complaint CL17-3690 against Centra, Baskervill Architecture, Inc. ("Baskervill") and the Commonwealth in Richmond City Circuit Court asserting a negligence count against each defendant arising out of the incident at the PEC on January 11, 2016. By Order dated February 12, 2018, the Richmond City Circuit Court granted Centra's and Baskervill's motions to transfer venue to Lynchburg pursuant to Virginia Code § 8.01-265, and this case was transferred to Lynchburg Circuit Court and renumbered CL18-220.

On January 10, 2018, Plaintiff filed Complaint CL18-151 against Centra, Michael Dunlop, M.D. ("Dr. Dunlop"), Michael Judd, M.D. ("Dr. Judd") and others in Richmond City Circuit Court asserting a single medical malpractice count arising out of this same incident.

On January 10, 2018, Plaintiff filed Complaint CL18-152 against Centra, Gillespie, Dr. Dunlop, Dr. Judd, James Barr ("Barr"), Dana Luck ("Luck"), Katherine Prater ("Prater") and others in Richmond City Circuit Court asserting eight counts arising out of this same incident.

7

In late 2018, Plaintiff received unfavorable rulings from Judge Yeatts in CL18-220 on ethics, privilege, and discovery issues in the series of Orders attached hereto as **Exhibits 4-6**.[4] After entry of these Orders, Plaintiff began searching for an alternative venue.

On February 21, 2019, Plaintiff non-suited CL18-151 and CL18-152. On April 23, 2019, Plaintiff non-suited CL18-220. Judge Yeatts' Order non-suiting CL18-220 ("Non-Suit Order") is attached hereto as **Exhibit 7**. As a condition to Centra's non-opposition to multiple nonsuits, Plaintiff "agreed to refile all available claims in one consolidated proceeding in Lynchburg, Virginia" and to "request and consent to the entry of an order incorporating all discovery, motions, objections, and orders that have been entered to date in the above-captioned lawsuit into the newly filed consolidated proceeding." **Ex. 7** at n. 1.

On August 15, 2019, over two years after this saga began with the filing of CL17-3690, Plaintiff filed Complaint 6:19CV00055 against Centra, Gillespie, Dr. Dunlop, Dr. Judd, Barr, Luck, Baskervill and Prater in this Court asserting eight counts arising out of this same incident.

Pursuant to the Non-Suit Order, this is the "one consolidated proceeding in Lynchburg, Virginia" and no other claims or proceedings can be filed. **Ex. 7** at n. 1. Although Plaintiff has switched courts, there is no escaping Judge Yeatts' Orders (**Exs. 4-6**) because all "orders that have been entered to date [in CL18-220], will be incorporated into [this lawsuit]." **Ex. 7** at n. 1.

---

[4] **Exhibit 4** is Judge Yeatts' September 6, 2018 Order, prohibiting counsel for Plaintiff from further contacting or communicating ex parte with current Centra employees and restricting ex parte communications with former Centra employees, and operation of websites that provide or seek information regarding Centra or this case. **Exhibit 5** is Judge Yeatts' October 29, 2018 Order, confirming Plaintiff's withdraw of his challenge, and ruling that Centra's privilege under Virginia Code § 8.01-581.17, which "include proceedings, minutes, records, reports, analyses, findings, conclusions, recommendations and deliberative processes" of the PEC Group, "and oral and written communications originating in or provided to the PEC Group, will be honored by the parties until such time in the future that the Court may rule upon the issue." **Exhibit 6** is Judge Yeatts' November 2, 2018 Order, requiring Plaintiff and his family to assemble, image and produce to Centra their phones, tablets, computers and other devices.

# III.     ARGUMENT

## A.     Standard of review.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." A complaint must be dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. While the allegations contained in a plaintiff's complaint must be viewed in the light most favorable to the plaintiff, courts need not credit conclusory legal terms and allegations that are not reasonably supported by factual allegations. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009); *Taubman Realty Group Ltd. P'ship v. Mineta*, 320 F.3d 475, 479 (4th Cir. 2003). Thus, it is appropriate for courts to "disregard any arguments or conclusions of law masquerading as facts," and refuse to "accept … unwarranted deductions of fact, or unreasonable inferences." *United States v. Rosen*, 487 F. Supp. 2d 721, 724 n.4 (E.D. Va. 2007);*Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).  Similarly, courts should not accept "conclusory factual allegations devoid of any reference to actual events." *Switzer v. Thomas*, 2013 WL 693090, at *2 (W.D. Va. 2013) (citing *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979)).

Moreover, a court is not bound to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney*, 293 F.3d at 730; *see also Miller v. Pacific Shore Funding*, 224 F.Supp.2d 977, 984 n.1 (D. Md. 2002) ("When the bare allegations of the complaint conflict with any exhibits or documents, whether attached or adopted by reference, the exhibits or documents prevail") (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).

9

Thus, the Court should consider the PEC Video and the Armed SCOP Order which are incorporated in the Complaint and disregard any contradictory allegations. Compl. ¶¶ 100-02, 147; **Exs. 1-3**; *see Warner v Doucette*, 2019 WL 3432744, *3 (W.D. Va. 2019) (considering documents and dismissing Jonathan Warner's § 1983 claim); *Jarvis v. City of Alexandria*, 2017 WL 2537038, at *2 (E.D. Va. 2017).

**B.      Count 4 (*Monell*-style Section 1983) fails to plausibly allege a policy or custom.**

In Count 4, Plaintiff implausibly asserts a *Monell*-style claim against Centra on the theory that his conclusory allegations of policies or customs caused Plaintiff to suffer constitutional deprivations. As a private corporation, Centra can only be liable under § 1983 for violations of federally guaranteed rights resulting from its official policies or customs, and the Complaint must make a "specific showing" of a policy or custom to plausibly support such a claim. *See, e.g., Brondas v. Corizon Health, Inc.*, 2014 WL 5393529 at *3 (W.D. Va. 2014) ("[T]he sole basis upon which Plaintiff may impose § 1983 liability against Corizon [Health], a private corporation, is by making a ***specific showing*** [in the complaint] that Corizon maintained a policy or custom that caused a deprivation of Plaintiff's federal rights. The complaint is devoid of any facts to support these claims, and, therefore, her claims do not rise to the level of plausibility.") (emphasis added).  Count 4 is a textbook example of what ***cannot*** give rise to a *Monell*-based § 1983 claim.

Notably, this is not the first time Plaintiff's counsel has attempted unsuccessfully in this Court to assert "*Monell*-style claims against Centra on the theory that its policies or customs were the cause of Plaintiff's constitutional deprivations." *Rose v. Centra Health, Inc.*, 2017 WL 3392494, at *8 (W.D. Va. 2017). Here, as in *Rose*, this Court should grant Centra's Rule 12(b)(6) Motion and dismiss Plaintiff's *Monell*-style claim. *Id.*

10

In an effort to whistle-past his pleading obligations, Plaintiff relies on vague, implausible and contradictory assertions of policy and customs and attempts to show a pattern of unconstitutional behavior through unspecified incidents, devoid of supporting facts, that occurred after-the-fact and are unrelated to the alleged deprivation. *See, e.g.,* Compl. at ¶ 202. Indeed, Plaintiff has not alleged a single, similar prior incident, and his failure to do so is fatal to his claim.[5] *See id.*; *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999).

Municipal liability under § 1983 attaches only for policies or customs having specific deficiencies that "'make the specific violation almost bound to happened, sooner or later, rather than merely likely to happen in the long run.'" *Carter*, 164 F.3d at 218 (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1389-91 (4th Cir. 1987)). "The challenged policy or custom cannot merely be the abstract one of violating citizens' constitutional rights." *Id*. Plaintiff must identify the offending municipal policy with precision. *Id*.

Indeed, a custom cannot be inferred from a course of action involving a single individual. *See, e.g., Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003) ("It is well settled that isolated incidents of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes. . . Rather, there must be 'numerous particular instances' of unconstitutional conduct in order to establish a custom or practice"); *Semple v. City of Moundsville*, 195 F.3d 708, 713-14 (4th Cir. 1999) (finding departures from a written policy in reference to how police handled multiple domestic disturbance calls concerning the same victim is insufficient to establish a deficiency in police training rising to the level of a municipal custom that is actionable); *Greensboro Prof. Fire Fighters Ass'n v. City of Greensboro*, 64 F.3d 962, 966

---

[5] Although the lack of a policy or custom is fatal to Plaintiff's *Monell* claim and this Court need not look further to dismiss Count 4, the lack of a constitutional violation also dooms this claim. Centra incorporates by reference Defendants Barr, Luck, and Gillespie's arguments that Plaintiff has failed to allege a constitutional violation.

11

(4th Cir. 1995) (plaintiff must prove "the existence of a practice that is widespread, pervasive and so permanent and well-settled as to constitute a custom or usage with the force of law"); *Tomasello v. Fairfax Cty.*, 2016 WL 165708, at \*26 (E.D. Va. 2016) (plaintiff must prove practices are "so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of them"); *Williams v. City of Charlottesville*, 1996 WL 335377, at \*6–7 (W.D. Va. 1996) ("The one occurrence relative to the allegations in the instant action is not sufficient to constitute a policy or custom. These allegations are insufficient, without more, to demonstrate 'persistent and widespread' policies of sufficient length and duration.").

Plaintiff, however, has identified no prior instances to support his *Monell*-style claim. Instead, Plaintiff asks this Court to infer from his vague allegations that Centra had a custom or policy based solely on a few irrelevant instances that have nothing to do with the cause of Plaintiff's alleged constitutional deprivations. None of the alleged instances relate in any way to the carrying or use of firearms or the shooting of a patient and most, if not all, of them occurred after the Warner incident took place. Centra has never had another firearm incident and Plaintiff offers no allegation to the contrary.

Plaintiff's allegations are simply insufficient to support a "custom or usage with the force of law" and Count 4 should be dismissed. *See Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984) (holding that there was "no properly pleaded allegation of the existence of a 'policy, practice or custom' upon which municipal liability. . . could be based" where there were "no factual allegations of known, widespread conduct by. . . employees comparable to that alleged as to [the plaintiff]" and no facts to support the conclusion that the plaintiff 'was part of a known course of conduct by city employees having manifest potential for causing constitutional deprivations to an identifiable group of persons occupying a special relationship to the state").

12

### i) Only official policies or customs give rise to *Monell* claims.

Section 1983 provides a cause of action against "every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. This statute is intended "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (*citing Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)).

"[G]enerally, the acts of private security guards, hired by [a private corporation], do not constitute state action," and thus do not trigger § 1983 liability for the corporation. *Reaves v. Dane*, 2016 U.S. Dist. LEXIS 168521, at *5 (W.D.N.C. 2016); *see also United States v. Day*, 591 F.3d 679, 688–89 (4th Cir. 2010) (holding that an apartment complex's private security guards were not state actors, even though they had the power to arrest). Under certain circumstances, a private corporation may be held liable under § 1983, but its liability is limited in the same manner as a municipality's under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Hence, "a private corporation is not liable under § 1983 . . . when such liability is predicated solely upon a theory of respondeat superior." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999). "Corporations like Centra can be held liable 'only when an official policy or custom causes the alleged deprivation of federal rights." *Rose*, 2017 WL 3392494, at *8 (W.D. Va. 2017).

In the § 1983 context, "'policy' refers to formal written policy, affirmative decisions of individual policymaking officials, or certain omissions by policymakers that manifest deliberate indifference to the rights of citizens." *Brondas v. Corizon Health, Inc.*, 2015 WL 3491130, at *5 (W.D. Va. 2015). "Custom" refers to a practice that "is so persistent and widespread and so

13

permanent and well settled as to constitute a custom or usage with force of law." *Carter*, 164 F.3d at 218. Centra is not liable for "isolated incidents of unconstitutional conduct by subordinate employees . . . "Rather, there must be 'numerous particular instances' of unconstitutional conduct in order to establish a custom or practice." *Lytle*, 326 F. 3d at 473 (quoting *Kopf v. Wing*, 942 F.2d 265, 269 (4th. Cir. 1991)). "Scattershot accusations of unrelated constitutional violations" cannot form the basis of a claims that a municipality was to the "moving force behind [a] deprivation." *Carter*, 164 F.3d at 218. Instead, a "plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id*. (quoting *Board of Cty Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)).

As for causation, "there [must be] a direct causal link between [a private corporation's] policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). When a private corporation's "'policy or custom' is itself unconstitutional, *i.e.,* when it directly commands or authorizes constitutional violations, the causal connection between policy and violation is manifest and does not require independent proof." *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir 1987). A policy or custom that is not itself unconstitutional, however, "must be independently proven to have caused the violation." *Id*. at 1387–88. Proof that such a policy or custom was likely the cause of the violation is not enough. *Id*. at 1388. Rather, "there must be proven at least an 'affirmative link' between policy or custom and violation; in tort principle terms, the causal connection must be 'proximate,' not merely 'but-for' causation-in-fact." *Id*. At the pleading stage, causation, like the other elements of a claim, must be plausibly alleged. *Jenkins v. Woody*, 2015 WL 8665457 at \*\*5-6 (E.D. Va. 2015) ("The focus of the Court's analysis is whether Plaintiff plausibly alleges that [defendant's] policy or custom of failing to investigate prior negative patient outcomes *caused* harm to Jenkins. She does not.").

14

### ii) **Plaintiff fails to articulate an official policy or custom.**

Plaintiff alleges Centra had a custom or policy - he isn't sure which - that permitted Centra security officers to commit unconstitutional acts. Plaintiff's conclusory and circular policy argument - that Centra had a generic policy simply to allow unconstitutional behavior - is implausible and devoid of factual support in Plaintiff's Complaint. Plaintiff's allegation that "Centra maintained an unconstitutional policy or custom of allowing its armed security guards or other employees the direction and discretion to seize patients without due process or probably cause and to use excessive force against patients" aligns squarely with the vague and imprecise pleading that this Court has previously dismissed under Rule 12. In *Newhard v. Borders*, 649 F. Supp. 2d 440, (W.D.Va. 2009) (J. Moon), this Court said the following about such a statement:

> Count II contains only the conclusory allegation that the Town 'implemented and promulgated a departmental policy, practice and custom of not enforcing the federal privacy rights of third-party non-arrestees, demonstrating deliberate indifference to such privacy rights.' There are no facts alleged in the Amended Complaint that could, for example, support a conclusion that the Town's governing official were actually or constructively aware of persistent and widespread constitutional deprivations by Town police officers. Nor are there any allegations of other, similar allegations of other, similar, constitutional deprivations at the hands of Town officers. Thus, aside from Newhard's conclusory allegations of a Town 'policy, practice, and custom of violation federal privacy rights, nothing alleged in the Amended Complaint can support that the alleged incident was anything more than an isolated event."

The Complaint contains no allegations of any written policy and the only allegation of any policy—paragraph 202—is nothing more than conclusory and vague language far below the threshold needed to assert a *Monell*-claim.

### iii) The "examples" listed by Plaintiff do not give rise to a *de facto* policy.

Unable to articulate an actual custom or policy, Plaintiff provides three categories of behavior from which Plaintiff attempts to reverse engineer an unconstitutional custom or policy. Compl. at ¶ 202. None of the three examples described by Plaintiff support his claim or align with the Constitutional violation Plaintiff claims to have suffered.

### a) Post-incidents events do not count.

Only incidents at Centra "*in place at the time of the incident*" can give rise to an unwritten policy or custom because "subsequent conduct cannot be the cause of the precedent violation." *Rose*, 2017 WL 3392494 at \*9 (emphasis added) (citing *Cordova v Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009)); *Moody v. City of Newport News, Va.*, 93 F. Supp. 3d 516, 535 (E.D. Va. 2015). Thus, Paragraph 202(a) of the Complaint, the "unlawful detention and wounding of a patient who left the hospital less than a month after Jonathon was shot," is irrelevant, as a matter of law. Paragraph 202(a) - which ironically refers to the *Rose* case that itself failed to state a *Monell*-style claim – should be disregarded.

Paragraph 202(b) relies on taser incidents that occurred *after* the incident involving Plaintiff, and cannot support Plaintiff's claim. Plaintiff cannot avoid this conclusion with vague allegations that omit when the alleged event occurred, because doing so fails to plausibly support a "specific showing" in support of an alleged policy or custom.[6]

---

[6] As Plaintiff's counsel is fully aware because they represent the patients and sent the letters to Centra attached hereto as **Exhibits 8-9** the incidents referenced in Paragraph 202(b) of the Complaint, just like the *Rose* matter, both occurred after-the-fact. Anthony Smith's and Harold Glass' alleged taser injuries both occurred in 2018 (over 2 years after Plaintiff's incident) in a different hospital facility and are thus irrelevant to Plaintiff's policy argument. **Exs. 8-9**.

16

**b) There is no causal link between the incidents and the alleged deprivations.**

The incidents in both Paragraph 202(b) and (c) likewise fail to support a "causal link" between the incidents alleged to give rise to a systematic deficiency – the use of tasers and restraints – and Plaintiff's alleged deprivations. There is no such Centra policy or custom, and regardless, the use of tasers and restraints against patients did not cause Plaintiff's injuries.

Paragraph 202(b) states "[s]everal known instances of using a TASER against patients who posed no threat of harm." The Complaint contains no allegation that any Centra employee wrongfully used a taser against Plaintiff. To the contrary, the only person that used a taser was Plaintiff against Centra employees, and Plaintiff unquestionably caused harming and "posing … threat[s] of harm" in the process of stealing and using the taser. *See generally*, **Exs. 1-2**.

Instead, the deprivations alleged by Plaintiff involve: (1) preventing him from leaving LGH or the PEC (Compl. at ¶¶ 151-67); (2) the shooting of Plaintiff by Mr. Gillespie with a firearm (*id.* at ¶¶ 168-82); and (3) the failure to provide Plaintiff due process (*id.* at ¶¶ 183-95). The Complaint makes thirteen references to tasers. *See id.* at ¶¶ 118, 141-42, 172, 174, 212. Every reference to tasers, except one, reference Plaintiff's wrongful use of the taser. *Id.* at ¶¶ 141-42, 172, 174, 212. The only mention of a taser not involving Plaintiff's attack on Centra employees comes in paragraph 118, when Plaintiff notes that Gillespie was equipped with a "Taser model X26 electric discharge weapon and pepper spray." Because none of these allegations relate to any purportedly similar policy or custom of Centra, Plaintiff fails to plausibly allege causal link between ¶ 202 (b) and any alleged deprivation of Plaintiff's rights. *See Jenkins v. Woody*, 2015 WL 8665457, at *5-6 (E.D. Va. 2015); *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)).

17

Like Paragraphs 202(a)-(b), Paragraph 202(c) is devoid of substance, merely conclusory, and fails to plausibly support any purportedly similar policy or custom. Paragraph 202(c) states "[s]everal known instances of the unlawful use of restraints against patients shortly before Jonathan was shot." Plaintiff's barebones allegations do not show any similar policy or custom that is "persistent and widespread and so permanent and well settled as to constitute a custom or usage with force of law." *Carter*, 164 F.3d at 218.

Plaintiff, for example, does not allege a policy of unlawful restraint using firearms, and Plaintiff otherwise fails to connect, in any plausible way, the use of firearms to arrest Plaintiff's indisputably violent attacks and whatever instances of restraint Plaintiff attempts to refer to in Paragraph 202(c). Whatever Plaintiff may have intended, it accomplishes nothing. A vague reference to "use of restraint" against patients lacks the requisite level of detail from which a causal link can be drawn to the restraint of Plaintiff. The vagaries and insufficiency of 202(c) is compounded by the fact that in regards to actual "restraints," Plaintiff claims that the violation is that Plaintiff was allowed to remain free and unrestrained. Compl. at ¶ 186. In the context of the unlawful restraint claim, Plaintiff appears to complain of Plaintiff's alleged inability to leave the PEC, rather than the physical restraints referenced in Paragraph ¶ 186 and ¶ 202(c). *Id.* at ¶ 164. Regardless, Plaintiff's inherently inconsistent pleading fails. Paragraph 202(c) does not give rise to any policy and there is not causal link to any of the deprivations of which Plaintiff complains.

### c) Plaintiff's examples are insufficient in duration and frequency.

Even if the unspecified incidents described in Paragraph 202(b)-(c) were within a relevant time-frame, the allegations do not give rise to incidents over a sufficient duration or frequency such that Centra could plausibly be on "actual or constructive knowledge" that the practice had become "customary among its employees." *Newhard v Borders*, 649 F. Supp. 2d 440, 446 (2009).

18

At best, the unspecified incidents, reflect only sporadic, unrelated conduct that bears no relationship to the conduct at issue in this case.

### iv) Count 4 should be dismissed with prejudice.

There are no facts alleged in the Complaint that could, for example, support a conclusion that Centra knew or maintained a *de facto* policy allowing its security guards to engage in unconstitutional act. Nor does the Complaint allege any other, relevant constitutional deprivations. Aside from the conclusory statement that Centra's "custom or practice of allowing its armed security guards or other employees the direction and discretion to seize patients without due process or probably cause and to use excessive force against patients," nothing alleged in the Complaint supports the notion that thee conclusory deprivations were more than distinct, one-off incidents. *Newhard*, 649 F. Supp. 2d at 446-47. Further, the PEC Video shows that no wrongful deprivation of Plaintiff's rights ever occurred. **Exs. 1-2**

Plaintiff's unsupported and deeply flawed *Monell*-claim is particularly troubling in light of his counsel's history of asserting ill-fated § 1983 claims in this Court on behalf of Plaintiff and against Centra. *Warner v Doucette*, 2019 WL 3432744 (W.D. Va. 2019); *Rose*, 2017 WL 3392494 (W.D. Va. 2017). This Court has previously warned Plaintiff's counsel about the need to abide by Federal Rules in filing § 1983 Complaints against Centra. See Transcript of Motion to Dismiss Hearing in *Rose v Centra* et al, 6:17cv12 (**Exhibit 10)** at pgs. 26, 30, 31. Because Count 4 is utterly implausible and devoid of any factual support and in light on Plaintiff and his Counsel's history of bringing improper § 1983 claims before this Court, Centra requests that this Court dismiss Count 4 with prejudice.

19

**C.** **Count 5 (Battery) Is Implausible and Contrary to the PEC Video.**

In Count 5, Plaintiff attempts to assert a facially implausible common law battery claim against Gillespie for reacting to and repelling Plaintiff's multiple, violent attacks on Gillespie and Bryan, by shooting Plaintiff four (4) times in less than five (5) seconds. Compl. at ¶¶ 136-47; **Exs. 1-2** (PEC Video). There is and can be no dispute that Gillespie's demonstrably instantaneous reaction and rapid succession of shots were immediately preceded by: (i) Plaintiff's violent, physical attacks on Gillespie and Bryan, (ii) Plaintiff's attack on and attempt to overpower Gillespie to take his holstered firearm, (iii) Plaintiff's successful attack that overpowered Gillespie and enabled Plaintiff to take Gillespie's taser, and (iv) Plaintiff's use of Gillespie's stolen taser to attack Bryan and assault Gillespie and Bryan. *Id*. Further, there can be no dispute that Plaintiff, after attacking Gillespie and Brian, ran toward Gillespie with the stolen taser and again made contact with Gillespie as he fired on Plaintiff. *Id*.

As alleged, Plaintiff was "unstable and physically very strong," (Compl. at ¶ 57), "in a fully psychotic state which caused him to be unable to control his actions and/or to distinguish right from wrong," (*id*. at ¶ 119), and "paranoid" with "delusional thought[s], violent outbursts, and irrational decision-making" (*id*. at ¶ 36), at the time of these events.

Nonetheless, Plaintiff asserts a battery claim based solely on the shots fired by Gillespie. Plaintiff further alleges that Centra is liable under the doctrine of *respondeat superior*. Because the underlying events are captured in security footage incorporated by reference in Plaintiff's Complaint, and unequivocally demonstrate that Gillespie acted reasonably, and with legal justification, Plaintiff's Complaint does not and cannot, as a matter of law, state a plausible claim for common law battery against Gillespie or Centra, and Plaintiff's battery claim should be dismissed with prejudice. Compl. at ¶¶ 136-47; **Exs. 1-2**.

Under Virginia law, battery is "an unwanted touching which is neither consented to, excused, nor justified." *Unus v. Kane*, 565 F.3d 103, 117 (4th Cir. 2009) (*quoting Koffman v. Garnett*, 265 Va. 12, 16 (2003)). "[A] legal justification for the act being complained of will defeat an assault or battery claim." *Id*.

As noted above, Gillespie was an armed SCOP, appointed by Order from the Lynchburg Circuit Court, and, at all relevant times, Gillespie was authorized by Court Order to carry a weapon on Centra premises, including the PEC and to affect arrests using up to the same amount of force as would be allowed to a law-enforcement officer employed by the Commonwealth." Compl. at ¶¶ 96-101, **Ex. 3** (Armed SCOP Order).

"Importantly, Virginia recognizes that police officers are legally justified in using reasonable force to execute their lawful duties." *Unus*, 565 F.3d at 117. Further, "[o]fficers, within reasonable limits, are the judges of the force necessary to enable them to make arrests. When acting in good faith, the courts will afford them the utmost protection, and they will recognize the fact that emergencies arise when they are not expected to exercise that cool and deliberate judgment which courts and juries exercise afterwards upon investigations in court." *Tatum v. Shoemaker*, 2012 WL 899633 35475 at *5-6 (W.D. Va. 2012) (finding "Plaintiff's alleged facts evince that the [correctional officers and other] defendants used force in a lawful manner while performing their official duties.").

In other words, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular

21

situation." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *Wilson v. Flynn*, 429 F.3d 465, 468 (4th Cir. 2005) (same).

Despite indisputable video footage demonstrating that Gillespie acted reasonably and with lawful justification, Plaintiff alleges, in a conclusory fashion, that Gillespie and Centra are liable for battery because Gillespie used "excessive force." Compl. at ¶ 213. Excessive force, however, is assessed "utilize[ing] a standard of 'objective reasonableness'" and an officer's "subjective motivations have no bearing on [the] inquiry." *Russell ex rel. Russell v. Wright*, 916 F. Supp. 2d 629, 636 (W.D. Va. 2013) ("[C]ourts are to determine 'whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."); *see also Unus*, 565 F.3d at 117.

Further, if the force used by an officer is objectively reasonable in light of the circumstances, a common law battery (or negligence) claim based on the same conduct must be dismissed. *See, e.g., Russell ex rel. Russell*, 916 F. Supp. 2d at 645 ("[A] favorable ruling for the defendant on an excessive force claim brought under § 1983 requires dismissal of the state law [gross negligence and battery] claims as well"); *Thompson v. City of Danville*, 2011 WL 2174536, at \*9 (W.D. Va. 2011) (finding state law assault, battery and negligence claims "fall with the federal [excessive force] claim") (aff'd by *Thompson v City of Danville*, 457 Fed. Appx. 221(4th Cir. 2011); *Sigman v. Town of Chapel Hill*, 161 F.3d 782, 789 (4th Cir. 1998) ("[B]ecause we have concluded that [the officer's] actions were, as a matter of law, reasonable in the circumstances of this case, they cannot be negligent or wrongful"); *Milstead v. Kibler*, 243 F.3d 157 (4th Cir. 2001) (affirming W.D. Va. decision finding plaintiff's state law claims fall with excessive force claim) (abrogated in part on other grounds).

Based on the video footage and the allegations consistent therewith in the Complaint, there can be no dispute that Gillespie acted reasonably and with lawful justification under any objective standard. Compl. ¶¶ 136-47; **Exs. 1-2**. Any claim to the contrary is implausible and fails to "raise a right to relief above the speculative level." *Unus*, 565 F.3d at 115.

Within the span on one (1) minute, Gillespie had been violently attacked and overpowered, Plaintiff had tried to take his holstered firearm and successfully took his unholstered taser, Plaintiff then used the stolen taser to attack and assault Bryan, and Plaintiff charged toward Gillespie, who now had his previously holstered firearm exposed. With Plaintiff charging toward him with the taser, Gillespie reacted instantly and fired four (4) shots in less than five (5) seconds to arrest Plaintiff's attack and protect himself and others from Plaintiff's continued irrational and uncontrolled violence. If Gillespie had not fired upon Plaintiff to arrest his attacks, Plaintiff could have taken Gillespie's gun, as he did with the taser. Under any objective standard, there can be no question that Plaintiff continued to pose an immediate threat to the life and safety of all involved and any other person accessible by Plaintiff.

As a matter of law, Gillespie's actions were reasonable and justified, and even Plaintiff admits in his Complaint that he was "unstable and physically very strong," (Compl. at ¶ 57), "in a fully psychotic state which caused him to be unable to control his actions and/or to distinguish right from wrong," (*id*. at ¶ 119), and "paranoid" with "delusional thought[s], violent outbursts, and irrational decision-making" (*id*. at ¶ 36).

In light of the incontrovertible video evidence incorporated in the Complaint and Plaintiff's allegations that do not contradict the undisputed video evidence, Plaintiff has not and cannot state a plausible claim for battery or excessive force by Gillespie. For the foregoing reasons, Plaintiff's common law battery claim must be dismissed with prejudice.

**D.    Count 6 (Negligence) is implausible and contradicted by the Armed SCOP Order.**

In Count 6, Plaintiff attempts to assert a facially implausible common law negligence claim against Centra for hiring Gillespie, entrusting Gillespie with a firearm, failing to properly train or supervise Gillespie, and allowing Gillespie and other security officers to carry a firearm in the PEC. Compl. at ¶¶ 221(a)-(i). Again, Plaintiff's own allegations and the Armed SCOP Order incorporated in his Complaint, preclude his claim and render it implausible. *Id.* at ¶¶ 88, 91, 93, 96-101; **Ex. 3**.

At the time of the incident, Gillespie had extensive experience working with firearms both as a police officer and as a security officer in the hospital setting. Compl. at ¶¶ 88, 91, 93. Moreover, the Lynchburg Circuit Court found in the SCOP order that was in effect that Gillespie was fully qualified, properly trained, had the requisite experience, and, appointed him as an Armed SCOP, and authorized him to carry and use his pistol in the PEC on January 11, 2016. *Id.* at ¶¶ 96-101; **Ex. 3**. The Armed SCOP Order likewise found, in view of Gillespie's age, experience and build, that "Gillespie is the proper person to perform to perform the duties of [and Armed SCOP]" at Centra until August 8, 2017. *Id*.

Based on Plaintiff's own allegations and the court's Armed SCOP Order, Plaintiff's Complaint does not and cannot state a plausible negligence claim against Centra, and Count 6 should be dismissed with prejudice. *Id.* at ¶¶ 88, 91, 93, 96-101; **Ex. 3**; *see Balderson v. Robertson*, 125 S.E.2d 180, 183 (Va. 1962) ("An action for negligence only lies where there has been failure to perform some legal duty which the defendant owes to the party injured.").

24

### i) Plaintiff's negligence theories are contrary to Virginia law.

Plaintiff's negligence claim against Centra is based on a list of alleged "structural, security and institutional failings" most of which occurred months or years before the incident. Compl. at ¶¶ 221(a)-(i). Plaintiff's negligence claim fails because these alleged "failings," as a matter of law, did not breach a legal duty that Centra owed to Plaintiff or proximately cause Plaintiff's injuries.

Paragraph 222(a)–(i) comprise the following negligence theories: (1) negligent hiring (Compl. at ¶ 222(c)); (2) negligent entrustment (*id.* at ¶ 222(d)); (3) negligent training and supervision (*id.* at ¶¶ 222(a)-(c), (e) & (f)); (4) negligent failure to adopt a policy (*id.* at ¶ 222(a)); (5) negligent design (*id.* at ¶¶ 222(b), (g)-(h)); and (6) and a generic catchall negligence theory stating Centra acted "otherwise" negligently (*id.* at ¶ 222(i)). These allegations do not - individually or collectively - state a negligence claim against Centra. Their sum is no greater than their defective parts. See *Parker v. Wendy's Intern., Inc.*, 41 F. Supp. 3d 487, 493 (E.D. Va. 2014) (dismissing portions of general negligence claim which were contrary to Virginia law.)

### a) Plaintiff has failed to allege negligent hiring or retention.

Plaintiff's negligent hiring and retention claim in Paragraph 222(c) fails because the Complaint does not allege: (1) a dangerous propensity of Gillespie; (2) actual or constructive knowledge of Centra; or (3) a causal relationship between the propensity and Plaintiff's injuries.

"Liability for negligent hiring is based upon an employer's failure to exercise reasonable care in placing an individual with known propensities, or propensities that should have been discovered by reasonable investigation, in an employment position in which, due to the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others." *Interim Pers. of Cent. Va. v. Messer*, 263 Va. 435, 440, 559 S.E. 2d

704, 707 (2002). A plaintiff must show that his "injury was the natural and probable consequence of the negligent or wrongful act and that the injury should have been foreseen in the light of attending circumstances." *Id.*, 263 Va. at 442, 559 S.E. 2d at 708. "A party is not charged with foreseeing that which could not be expected to happen." *Id*. Here, Plaintiff has not plausibly alleged any of this. *Id.*; *Gray v. Roads*, 55 Va. Cir. 362, 377-78 (Charlottesville Cir. 2001) (granting demurrer as to claim of negligent hiring of police officer that fatally shot plaintiff's son who attacked the officer during an arrest).

### b) Plaintiff has failed to allege negligent entrustment.

Plaintiff's negligent entrustment claim in Paragraph 222(d) fails because the Complaint does not allege: (1) unfitness of Gillespie; (2) actual or constructive knowledge of Centra that he was likely to use the pistol or taser improperly causing injury to others; or (3) proximate cause.

A claim for negligent entrustment of a chattel—in this case, a gun and taser—must include an allegation that "the owner knew, or had reasonable cause to know, that he was entrusting his [chattel] to an unfit [user] likely to cause injury to others." *Denby v. Davis*, 212 Va. 836, 838, 188 S.E. 2d 226, 229 (1972). Plaintiff's Complaint contains no such allegation and identifies no deficiency that rendered Gillespie unfit to possess a firearm or taser. Indeed, the Lynchburg Circuit Court ruled otherwise in its Armed SCOP Order. Compl. at ¶¶ 96-101; **Ex.3**. Plaintiff has not and cannot allege a deficiency that makes the entrustment negligent.

Moreover, the deficiency that makes the entrustment negligent must mirror the deficiency that proximately causes injury to the Plaintiff. *Turner v. Lotts*, 244 Va. 554, 557, 422 S.E. 2d 765, 767 (1992). In *Rose v. Centra Health, Inc.*, 2017 WL 3392494, at \*\*10-11 (W.D. Va. 2017), this Court granted Centra's motion to dismiss Plaintiff's claim for negligent entrustment of a taser for failure to adequately plead proximate cause. This Court held that: "the Complaint does not allege

a sufficient causal relationship between the entrustment and Plaintiff's injuries. There are no allegations, for instance, that Tidwell failed to use the taser properly or used the taser accidentally because he was unfamiliar with its functions. Instead, Plaintiff's claim is that the taser should not have been used at all." *Id.* (*citing Hack v Nester*, 241 Va. 499, 504-05, 404 S.E. 2d 42 (1990) (holding that entrusting a car to unlicensed driver—though negligent—was not actionable where the driver injured plaintiff due the driver's intoxication, a fact unrelated to not possessing a license)). Here, as in *Rose*, Plaintiff has not plausibly alleged that Centra's negligent entrustment was the proximate cause of his injuries. *Id.*

### c)     Virginia does not recognize negligent training or supervision.

Plaintiff's negligent training and supervision claims in Paragraphs 222(a)-(c), (e) and (f) fail because they are not recognized under Virginia law. *Chesapeake & Potomac Telephone Co. of Va. v. Dowdy*, 235 Va. 55, 61, 365 S.E.2d 751, 754 (1988); *Parrish v. Am. Airlines, Inc.*, 97 Va. Cir. 271, 2017 WL 9917197, *5 (Norfolk Dec. 12, 2017) ("It has been repeatedly concluded that Virginia Courts do not recognize a claim of negligent supervision . . .Similarly, this Court is not aware of any authority recognizing negligent training in Virginia and a number of courts have declined to recognize negligent training in cases where the cause of action was proposed"); *Porter v. Woods*, 96 Va. Cir. 280, 2017 WL 10966679 at *3 (Norfolk Aug. 2017) ("Numerous Virginia circuit courts have declined to recognize [claims for negligent training]."); *Cleaves-McClellan v. Shah*, 93 Va. Cir. 459 (Norfolk 2016) (relying on *Dowdy* and holding "that negligent supervision is not a recognized cause of action in Virginia."). Plaintiff simply cannot pursue claims for negligent training or supervision—causes of action not recognized in Virginia.  Even if he could, the Armed SCOP Order renders any contrary allegations implausible.

#### d) **Virginia does not recognize negligent failure to adopt a policy.**

Plaintiff's claim in Paragraph 222(a) that Centra was negligent "in failing to adopt and/or enforce a reasonable firearms policy" fails because the alleged failure to adopt and/or enforce a policy is not tantamount to negligence. Under Virginia law, company policies cannot create legal duties or establish a standard of care. *Virginia Ry. & Power Co. v. Godsey*, 117 Va. 167, 167, 83 S.E. 1072 (1915); *Pullen v. Nickens*, 226 Va. 342, 350, 310 S.E.2d 452, 456 (1983)); *Taylor v O'Neil*, 92 Va. Cir. 303, 304 (Norfolk 2016) (*quoting Hawthorne v. Lavinder*, 72 Va. Cir. 375, 375 (Roanoke County 2006)) ("It is well settled in Virginia that internal policies and procedures, as 'private rules,' are not admissible to establish a standard of care."); *Owens v. Children's Hosp. of the King's Daughters, Inc.*, 45 Va. Cir. 97, 100 (Norfolk 1997) ("the long standing rule in Virginia is that private rules of conduct are not admissible to show the standard of care"). Centra does not owe Plaintiff a legal duty to adopt or enforce a firearms policy. *Id*; *see also Stevens v. Byrd*, 49 Va. Cir. 410, 412-14 (Dickenson Cir. 1999) (holding that firearms policy could not establish standard of care under *Pullen* and *Godsey*, there was no causal connection between policy and plaintiff's death, and the policy was inadmissible to support a negligence claim). Because an internal policy cannot support a negligence claim, the lack of any policy likewise cannot support a negligence claim.

#### ii) **Centra's alleged failings did not proximately cause Plaintiff's injuries.**

Plaintiff has not plausibly alleged that the training of Gillespie, the design of the PEC or any of the other alleged "structural, security and institutional failings" - most of which occurred months or years before the incident - proximately caused his injuries, nor could he. Compl. at ¶¶ 221(a)-(i).

28

Proximate causation can be decided as a matter of law and a motion to dismiss should be granted where, as here, "the Complaint is devoid of allegations that Centra's negligence was the proximate cause of Plaintiff's injuries." *Rose*, 2017 WL 3392494 at \*10 (disregarding plaintiff's "impermissible legal conclusion" and dismissing negligence claim for failure "to adequately plead proximate cause").

The proximate cause "immediately causes or fails to prevent the injury." *Banks v. City of Richmond*, 232 Va. 130, 135-36, 348 S.E.2d 280 (1986). Centra's alleged "structural, security and institutional failings" (Compl. at ¶¶ 221(a)-(i)) were merely circumstances of the incident, not the proximate cause of Plaintiff's injuries. *Id.*; *see Hubbard v. Murray*, 173 Va. 448, 456, 3 S.E.2d 397, 401 (1939) (holding as a matter of law that "the negligence of the truck driver was the sole proximate cause of the accident, and the fact that the bus was improperly stopped on the highway was merely a circumstance of the collision, or a remote cause thereof"); *Wyatt v. Chesapeake & Potomac Tel. Co.*, 158 Va. 470, 163 S.E. 370 (1932) (holding as a matter of law that the unlawful location of a telephone pole on a portion of the highway was not the proximate cause of the plaintiff's injuries which resulted when the car in which she was a passenger, in the effort to avoid striking another car, ran off the traveled portion of the road and struck the pole).

Indeed, Plaintiff alleges that Gillespie's gun was secured in a "level 3 retention holster" with "security features designed to prevent the firearm from being released accidentally or by other persons," and Plaintiff was "unable to release Gillespie's Glock pistol from its holster." Compl. at ¶¶ 138-40. Thus, the pistol was only accessible by Gillespie, the person designed to access it when holstered, and it was used only in a non-negligent manner by the person intended to use it—an armed and qualified SCOP who used it to arrest the violent and threatening conduct of a person who posed a danger to the life and safety others at the time it was fired.

29

### iii) Plaintiff's allegations do not rise to the level of gross negligence.

Finally, Plaintiff does not and cannot allege that any of Centra's alleged "structural, security and institutional failings" (Compl. at ¶ 224) rise to the level of gross negligence. Under Virginia law, gross negligence involves misconduct of a vastly higher magnitude than ordinary negligence. *Town of Big Stone Gap v. Johnson*, 184 Va. 375, 378, 35 S.E.2d 71, 73 (1943). While ordinary negligence occurs whenever a party fails to use the degree of care that an ordinarily prudent person would exercise to avoid injury to another, gross negligence may not be found unless a party demonstrates complete indifference and acts with "an utter disregard of prudence amounting to complete neglect of the safety of another." *Frazier v. City of Norfolk*, 234 Va. 388, 393, 362 S.E.2d 688 (1987); see *Johnso*n, 184 Va. at 378 (town's leaving of a commercial road grader equipped with a heavy metal blade near playground in public park maintained by town and designated for use of small children was not gross negligence as a matter of law); *Colby v. Boyden*, 241 Va. 125, 400 S.E. 2d 184 (1994) (deputy who was speeding, ran a red light and sideswiped an innocent bystander was not grossly negligent as a matter of law.). Plaintiff has not met this high standard.

## V. CONCLUSION

For the foregoing reasons, Centra respectfully requests that this Court dismiss Counts 4, 5 and 6 of Plaintiff's Complaint in their entirety and with prejudice, and award Centra their attorneys' fees and costs for defending this suit and such other relief as this Court may deem just and proper.

Dated:  November 18, 2019　　　　Respectfully Submitted,

CENTRA HEALTH, INC

By: */s/ Joshua F.P. Long*
　　　Of Counsel

Elizabeth Guilbert Perrow, Esq. (VSB No. 42820)
Daniel T. Sarrell, Esq. (VSB No. 77707)
Joshua F. P. Long, Esq. (VSB No. 65684)
Joshua R. Treece, Esq. (VSB No. 79149)
J. Walton Milam III, Esq. (VSB No. 89406)
WOODS ROGERS PLC
P. O. Box 14125
Roanoke, VA 24038-4125
Phone: (540) 983-7600
Fax: (540) 983-7711
eperrow@woodsrogers.com
dsarrell@woodsrogers.com
jlong@woodsrogers.com
jtreece@woodsrogers.com
wmilam@woodsrogers.com

　　　*Counsel for Defendant Centra Health, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 18th day of November, 2019, a true and accurate copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notice to the following counsel of record:

*/s/ Joshua F.P. Long*

31