IN THE U.S. DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| RUTH ANN WARNER, as Guardian of | ) | |
| JONATHAN JAMES BREWSTER WARNER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 6:19CV00055 |
| | ) | |
| CENTRA HEALTH, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT BASKERVILL'S
MOTION TO DISMISS**

COMES NOW the Plaintiff, by counsel, and opposes the Motion to Dismiss filed by

Defendant Baskervill Architecture, Inc. ("Baskervill) (ECF 10) on the following grounds:

**INTRODUCTION**

This case focuses on a shooting that should never have been permitted to get to that point,

of a young man who never should have been there.  Many individuals and entities are links in the

causal chain that resulted in Jonathan Warner—in an acutely psychotic state completely divorced

from reality—lashing out and ultimately laying on the floor, his spinal cord severed by a security

guard's bullet.  Specifically, Defendant Baskervill was the architecture firm that designed the

Psychiatric Emergency Center ("PEC") where Mr. Warner was shot.  Generally speaking,

Baskervill failed to comply with known industry standards and best practices for the design of

mental health facilities, which resulted in the PEC being an incubator for the inevitable

uncontrolled violent episode that occurred less than three months after the PEC first opened.  As

a result, when a foreseeable altercation arose at the PEC, the safeguards that should have been in

place to allow people to retreat to safety and to contain the violence were absent, contributing in part to a security officer's decision to shoot Mr. Warner multiple times.

### Facts and Procedural History

Centra engaged Baskervill to provide architecture and design services in the planning phase of the PEC.  (Compl. ¶24.)  Baskervill holds itself out as having experience and expertise in the design of medical facilities generally and mental health facilities specifically.  (*Id.* ¶25.) Industry standards and best practices provide guidance on how to design a mental health facility to be safe, non-confrontational, and confidential.  (*Id.* ¶26.)  These standards suggest that a facility like the PEC have a separate, self-contained admission room with controlled access at both ends—essentially an airlock.  This so that a new patient, like Mr. Warner, whose condition and level of stability is unknown to the facility staff, can be isolated from the rest of the staff and patients during the admission process, and observed.  This kind of admission room also makes it easier to calm or restrain a patient if necessary because the patient has less space to act out.  (*Id.* ¶26.)

It is also well-known in the mental health treatment industry that guns and mentally ill people do not mix.  Thus, it is common practice for mental health facilities to have physical design elements, like lock boxes, for law enforcement officers and others to stow their firearms before entering the facility.  (*Id.* ¶28.)  This completely eliminates the known risk of a mentally ill individual, unable to control himself, gaining access to a firearm within the facility.  Finally, given the relative foreseeability that there will, at some point, be violent outbursts at mental health treatment facilities, a secondary exit is a common design element so that if a patient does become violent, staff and other patients can evacuate.  (*Id.* ¶30.)  The fewer people there are in

2

the vicinity, the less a law enforcement officer will feel a need to protect others by use of force.

Baskervill did not employ any of these design elements.  Instead, it designed the PEC with what would be described in the residential context as an "open concept."  Patients, healthcare providers, law enforcement, etc. all entered through the same vestibule into an open circulation area, in the same space as the nurse's station, doors to individual patients' rooms, the bathroom, and treatment rooms.  (*Id.* ¶27.)  Thus, instead of being in an admission area separate from everything else, when he first arrived at the PEC Mr. Warner was in a large, open space. (*Id.*)  This made it much more difficult for staff to control or contain the type of conflagration that is so foreseeable in these kinds of facilities.  There was no firearms lockbox, so when security officers came into the PEC, their guns were still on their hips.  And finally, there was only one point of ingress and egress.  In the event of a violent outburst, if anyone wanted to leave or if additional security officers needed to come in, there was a choke point at the one door.  (*Id.* ¶234.)

Plaintiff initially filed suit against Baskervill Architecture, Inc. in the Circuit Court for the City of Richmond, and served the Complaint upon Baskervill.  Baskervill responded to the Complaint with both an answer and a motion to transfer venue.  In its answer, Baskervill suggested that the proper defendant was a related entity, Baskervill & Son, P.C.  However, it did not seek dismissal or any other type of relief due this alleged misnomer.  The Richmond Circuit Court granted the motion to transfer venue, transferring the case to Lynchburg.  Thus, the complaint was transferred with Baskervill Architecture, Inc. as the named defendant.  Upon transfer, Baskervill continued to litigate in the normal course, litigating generally as "Baskervill," regardless of which entity was named in the caption of the complaint.  In short, everyone knew

3

the situation and treated it for what it was—a misnomer.  Everyone knew that this was a situation where, at most, the correct defendant was incorrectly named.  After several months of litigation, Plaintiff nonsuited that case and then refiled the same case against Baskervill in this Court.

## ANALYSIS

A.    **If the wrong entity has been named, it is a curable either as a confusion in trade name or a misnomer.**

As Baskervill's memorandum recites, in the state court litigation it made representations to Plaintiff that the proper entity for a suit regarding the design of the PEC was Baskervill & Sons, P.C.  But it never pressed the issue in terms of seeking dismissal of Baskervill Architecture, Inc. or demanding that the Complaint be amended.  Instead, it litigated the case generically as "Baskervill."  This is because the state court complaint made clear in its factual allegations the same thing that is clear here—the intended defendant is whichever Baskervill entity was responsible for designing the PEC.  Indeed, Baskervill endorsed the nonsuit Order explicitly as Baskervill Architecture, Inc.  (ECF 14-3 at 2.)

The conundrum in this type of situation comes when the plaintiff goes to refile the nonsuited claim.  After taking a nonsuit, a plaintiff must refile against "the same party."  Virginia Code § 8.01-380(A).  And the Virginia case books are replete with examples of defendants seeking to call foot-faults for failure to comply with § 8.01-380.  So, here, the case was nonsuited against Baskervill Architecture, Inc.  If Plaintiff had refiled the case against a different entity—Baskervill & Son, Co.—there would absolutely have been an argument that the new filing did not relate back to the old filing.  And so, to be safe, Plaintiff refiled the claim against the same defendant that was named in the nonsuited case.

Plaintiff's claim against Baskervill is timely under either of two relation-back analyses

under Virginia law, which is incorporated into federal procedure by Federal Rule of Civil

Procedure 15(c)(1).

1.       **Plaintiff's claim relates back under Virginia Code § 8.01-6.2.**

Baskervill's argument is essentially that Plaintiff named the wrong Baskervill entity in

the nonsuited case and now this case.  With so many commercial enterprises having complex

webs of related entities, it is not uncommon for litigants to confuse trade names or entity names

in pleadings.  Virginia recognizes this and takes a very function-over-form-view of the matter.

Virginia Code § 8.01-6.2 states:

> A pleading which states a claim against a party whose trade name or corporate
> name is substantially similar to the trade name or corporate name of another entity
> may be amended at any time by inserting the correct party's name, if such party or
> its agent had actual notice of the claim prior to the expiration of the statute of
> limitations for filing the claim.

Va. Code § 8.01-6.2(A).  This section of the code fits this situation perfectly.  As stated above,

Baskervill actively litigated the nonsuited case generically as "Baskervill," without regard to

what trade name or entity name appeared in the caption.  Baskervill thus had actual notice of the

claim prior to the expiration of the statute of limitations.  The first lawsuit was thus timely, which

means that by virtue of the nonsuit statute's tolling provision the second claim was also timely

and relates back to the filing of the original suit.  The Complaint may thus be amended any time

to correct the issue by virtue of § 8.01-6.2 and then Federal Rule 15(c)(1)'s incorporation of state

relation back rules.

2.       **Alternatively, this is a curable misnomer.**

There is controlling authority directly on point from the Supreme Court of Virginia that

answers the question presented by Baskervill's Rule 12(b)(1) motion.  In *Richmond v. Volk*, 781

S.E.2d 191 (Va. 2016), the plaintiff was in a car wreck with Katherine Volk.  Ms. Volk's car was owned by Jeannie Cornett.  The plaintiff filed suit against "Katherine Cornett," *i.e.* a mashup of the driver and the vehicle owner.  In responding to this complaint, Volk, the proper defendant, never claimed that she was not, in fact, the person identified in the lawsuit and indeed explicitly acknowledged that she was "erroneously identified in the caption of the complaint as 'Katherine Cornett.'"  *Id.* at 192.

The plaintiff subsequently nonsuited the complaint, and then refiled against "Katherine E. Volk, f/k/a Katherine E. Craft, a/k/a Katherine E. Cornett."  Volk responded to the refiled complaint with a special plea asserting that the claim was barred by the statute of limitations. She argued that the prior complaint did not toll the statute of limitations because the refiled complaint did not relate back to the prior complaint.  *Id.*

On appeal, the Supreme Court rejected the defendant's position.  The first question was whether the first complaint suffered from a misnomer or a misjoinder.  The Court reasoned that even though the complaint named the wrong person in the caption—indeed, a person who did not exist—"the pleading, when considered as a whole, clearly identifies Volk as the proper party to the action."  *Id.* at 193.  Because the factual allegations in the first complaint "establish that the intended defendant was the driver of a specific vehicle that was in a specific location at a specific time and that the driver of that vehicle committed a specific act," and because "Volk is the only person that fits this description, it is readily apparent that she was the person against whom the action was intended to be brought."  *Id.*  Thus, the first complaint suffered from misnomer, not misjoinder.  So too here.  If, in fact, it was Baskervill & Son, Co. that did the design work for the PEC, the state court complaint, "considered as a whole," clearly identifies Baskervill & Son, Co.

6

as the proper party.  The factual allegations establish that the intended defendant was the entity

that performed a specific task on a specific project and committed a specific act or omission, and

so it was readily apparent that the Baskervill entity that did the PEC design work was the

intended defendant.  This is, at most, a misnomer under *Richmond*.

Turning back to that case, having determined that the first complaint suffered from a

misnomer, the Court next had to decide "what effect, if any, the failure to correct that misnomer

prior to taking a nonsuit had" on the refiled case.  *Id.* at 194.  The defendant claimed that the

failure to correct the misnomer in the first action prevented Virginia Code § 8.01-229(E) from

tolling the statute of limitations for purposes of the refiled action.  The Court once again rejected

the defendant's position.  The Court observed that for § 8.01-229(E)'s tolling provision to apply,

"there must be identity of parties" between the initial action and the recommenced action.  *Id.*

(quoting *Casey v. Merck & Co.*, 722 S.E.2d 842, 846 (Va. 2012)).  And because a misnomer

"only speaks to the name of a party, not the identity of a party," the refiled action was against the

same party as the initial action, and so the tolling provision applies.  *Id.*  Once again, so too here.

Both this Complaint and the prior complaint clearly identify the intended party—the Baskervill

entity that did the PEC design work.  Because identity of parties exists as between both

complaints, the filing of the first action tolled the statute of limitations for purposes of the refiled

action.  And so the remedy here, if one is needed, would be an amendment of the pleading under

Virginia Code § 8.01-6 and Federal Rule of Civil Procedure 15, not the drastic remedy of

dispositive dismissal requested by Baskervill.  *See* Fed. R. Civ. P. 15(c)(1)(A) (providing that an

amendment relates back when the law that provides the applicable statute of limitations allows

relation back); *DePaola v. Clarke*, 394 F. Supp. 3d 573, 588 (W.D. Va. 2019) (applying Virginia

Code § 8.01-6's relation back analysis to a Federal Rule 15(c)(1)(A) relation back analysis).

Baskervill's Rule 12(b)(1) motion should be denied.

**B.      The Complaint states a claim against Baskervill.**

Baskervill devotes the balance of its memorandum in support to its contention that the

Complaint fails to state a claim for relief against Baskervill.  In considering this argument, it

must be remembered, at the outset and throughout the analysis, that this is the *exact same* claim

that was filed against Baskervill in the prior litigation.  And in that litigation, Baskervill *never*

contended that the allegations in the complaint failed to state a claim for negligence.  Thus,

according to Baskervill, allegations that just months prior were sufficient to state a claim under

Virginia law in Virginia state court are now somehow insufficient to state a claim under Virginia

law in this Court.  But be that as it may, Baskervill's motion still fails.

Baskervill's analysis suffers from two main flaws.  The first is that it proceeds by taking

individual subparagraphs of Paragraph 234 in isolation, and then asking whether that

subparagraph standing alone is sufficient to state a claim.  (ECF 11 at 10-18.)  This mode of

analysis flies directly in the face of settled law on how to analyze a Rule 12(b)(6) motion.  *See,*

*e.g.*, *Harman v. Unisys Corp.*, 746 F. Supp. 2d 755, 760 (E.D. Va. 2010) ("In considering a Rule

12(b)(6) motion, the Court must construe the complaint in the light most favorable to the

plaintiff, *read the complaint as a whole*, and take the facts asserted therein as true.") (emphasis

added) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993));  *see also Albright*

*v. Oliver*, 510 U.S. 266, 268 (1994)).  Thus, Baskervill's entire approach is fundamentally flawed

from the outset.

The second flaw in Baskervill's analysis is that it gets proximate cause all wrong.  First

8

and foremost, Baskervill completely ignores the fundamental precept of Virginia law that proximate causation is almost always a question of fact, not amendable to resolution as a matter of law. *See, e.g.*, *Russo v. United States*, 37 F. Supp. 2d 450, 452 (E.D. Va. 1999) ("[I]n Virginia, questions of proximate cause and foreseeability are questions for the trier of fact to decide and only become a question of law if undisputed facts are susceptible of only one inference.") (denying motion to dismiss on proximate causation grounds).  And second, Baskervill's analysis is infected throughout by the notion that because Baskervill's negligence occurred months or even years prior to Mr. Warner being shot, it cannot be a proximate cause of his injuries given the more temporally proximate allegations of wrongdoing by other defendants.  But under Virginia law, proximate causation does not look at when the negligence occurred, but rather when it caused injury.  "Established Virginia law indicates that in order for acts of negligence to constitute concurring causes, it is not necessary that concurring acts occur simultaneously." *Ford Motor Co. v. Boomer*, 736 S.E.2d 724, 732 (Va. 2013).

Properly analyzed, the allegations against Baskervill easily state a plausible claim that satisfies Virginia's proximate causation doctrine.  Baskervill designed a mental health facility that (1) permitted mentally ill individuals to be in close proximity to firearms due to the lack of a firearms storage element, (2) with no separation between newly present, unknown and often unstable mentally ill individuals and everyone else in the facility, (3) with no way for those in the facility to escape from a mentally ill individual's violent outbursts other than through the very front door that the unstable, mentally ill individual came through.  Taken as a whole, these allegations would permit a reasonable jury to conclude that Baskervill's failures were a proximate cause of Mr. Warner's ultimate injury.  The first failure is almost a tautology—had

there not been firearms present in the PEC, Mr. Warner would not have been shot.  But even when viewed less simplistically, the conclusion is the same.  Mr. Gillespie will no doubt contend that his decision to use lethal force against Mr. Warner was motivated, at least in part, by a perceived need to protect others—staff, other patients, etc.—from Mr. Warner.  Had those others not been present, because Mr. Warner was isolated in a contained admission and screening area and/or because the others had a reasonable ability to escape through a secondary exit, Mr. Gillespie's perceived need to protect others would have been greatly reduced.  Thus, at this stage, it is certainly plausible that Baskervill's negligence, taken as a whole, concurred with the subsequent failures of Centra and the individual defendants to produce Mr. Warner's ultimate injury.  The Complaint thus adequately alleges proximate causation.

## <u>CONCLUSION</u>

For the reasons stated above, Baskervill's motion to dismiss should be denied.


Respectfully submitted,
RUTH ANN WARNER, as Guardian of
JONATHAN JAMES BREWSTER WARNER
By Counsel


_____/s/ E. Kyle McNew_____
M. Bryan Slaughter, Esquire (VSB No. 41910)
E. Kyle McNew, Esquire (VSB No. 73210)
MICHIEHAMLETT
310 4th Street NE
P.O. Box 298
Charlottesville, Virginia 22902
(434) 951-7200; (434) 951-6464 Facsimile
bslaughter@michiehamlett.com
kmcnew@michiehamlett.com

M. Paul Valois (VSB No. 72326)
JAMES RIVER LEGAL ASSOCIATES

7601 Timberlake Road
Lynchburg, Virginia 24502
(434) 845-4529; (434) 845-8536 Facsimile
mvalois@vbclegal.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of December, 2019, a true and accurate copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following:

Stephan F. Andrews, Esquire (VSB No. 23756)
J. Brandon Sieg, Esquire (VSB No. 84446)
O'HAGAN MYER, PLLC
411 E. Franklin Street, Suite 500
Richmond, VA 23219
(804) 403-7100
(804) 403-7110 Facsimile
sandrews@ohaganmeyer.com
bsieg@ohaganmeyer.com
*Counsel for Baskervill Architecture, Inc.*

Elizabeth Guilbert Perrow, Esquire (VSB No. 42820)
Daniel T. Sarrell, Esquire (VSB No. 77707)
Joshua F. P. Long, Esquire (VSB No. 65684)
Joshua R. Treece, Esquire (VSB No. 79149)
J. Walton Milam III, Esquire (VSB No. 89406)
WOODS ROGERS PLC
Post Office Box 14125
Roanoke, VA 24038-4125
(540) 983-7600
(540) 983-7711 Facsimile
eperrow@woodsrogers.com
dsarrell@woodsrogers.com
jlong@woodsrogers.com
jtreece@woodsrogers.com
wmilam@woodsrogers.com
*Counsel for Centra Health, Inc.*

Eric P. Burns, Esquire (VSB No. 76554)
Eric L. Olavson, Esquire (VSB No. 87872)
WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
8444 Westpark Drive, Suite 510
McLean, Virginia 22102
(703) 245-9300
(703) 245-9301 Facsimile
eric.burns@wilsonelser.com
eric.olavson@wilsonelser.com
*Counsel for Dana Luck, James Barr, and Wesley Gillespie*

12

Jennifer D. Royer, Esquire (VSB No. 68099)
ROYER LAW FIRM, PC
Post Office Box 4525
Roanoke, Virginia 24015
(540) 788-2982
(540) 675-4093 Facsimile
jroyer@royerlawfirm.com
*Counsel for Katherine Prater*

       /s/ E. Kyle McNew