IN THE U.S. DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| **RUTH ANN PLAINTIFF, as Guardian of JONATHAN JAMES BREWSTER WARNER** | ) ) ) |
| **Plaintiff** | ) |
| v. | ) Case No. 6:19CV00055 |
| | ) |
| **CENTRA HEALTH, INC., et al.** | ) ) |
| **Defendants** | ) |

**DEFENDANT CENTRA HEALTH, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO CONFIRM THE CONTINUED APPLICABILTY OF THE PEC GROUP PRIVILEGE UNDER VIRGINIA CODE § 8.01-581.17**

Defendant Centra Health, Inc. ("Centra"), by counsel, files this Memorandum in Support of its Motion to Confirm the Continued Applicability of the PEC Group privilege under Virginia Code § 8.01-581.17. As set forth below, Centra has established its statutory privilege under Virginia Code § 8.01-581.17, preventing the disclosure or discovery of the proceedings, minutes, records and reports of the PEC Group, together with all communications, both oral and written, originating in or provided to the PEC Group.

**INTRODUCTION**

Centra has shown that "the PEC Group is a protected group under [Virginia Code] §§ 8.01-581.16 and 17" and therefore "the documents prepared in the design and organization of the PEC are protected under Virginia Code § 8.01-581.17." Order (Doc. 62) at p. 1, 3.

The Affidavits of Ted Stryker ("Stryker") and Gina Meadows ("Meadows"), along with the exhibits and deposition testimony of Stryker, Meadows and Tim Paul ("Paul") all confirm that the PEC Group is a committee, group or other entity under Virginia Code § 8.01-581.16, and therefore its "proceedings, minutes, records and reports, … together with all communications, both

oral and written, originating in or provided to [the PEC Group] are privileged communications which may not be disclosed or obtained by legal discovery proceedings" under Virginia Code § 8.01-581.17. *See generally* Dep. Tr. of Theodore Donald Stryker (Oct. 7, 2020) attached hereto as **Exhibit A** ("Stryker Dep."); Dep. Tr. of Gina Meadows (Oct. 7, 2020) attached hereto as **Exhibit B** ("Stryker Dep."); Dep. Tr. of Timothy Paul (Oct. 8, 2020) attached hereto as **Exhibit C** ("Paul Dep."); Affidavit of Ted Stryker attached hereto as **Exhibit D** ("Stryker Aff."); Affidavit of Gina Meadows attached hereto as **Exhibit E** ("Meadows Aff.").

## PROCEDURAL HISTORY

During the predecessor state court action (CL18-220), Centra asserted its statutory privilege under Virginia Code § 8.01-581.17, and demonstrated its applicability to the PEC Group. Specifically, Centra explained to Plaintiff and the Court that the PEC Group clearly qualifies as a committee, group or other entity as specified in Virginia Code § 8.01-581.16, and therefore its proceedings, minutes, records and reports, together with all communications, both oral and written, originating in or provided to the PEC Group are privileged and cannot be disclosed or discovered under Virginia Code § 8.01-581.17. This issue should not have been controversial, given Centra's clear reliance on applicable and well-established Virginia statutory law.

Nonetheless, Plaintiff initially attempted to challenge Centra's statutory privilege under Virginia Code § 8.01-581.17 in the state court action. After the parties briefed the issue and held a hearing before Judge Yeatts, Plaintiff undoubtedly saw the writing on the wall and, rathing than pursuing the matter further and waiting for a ruling from Judge Yeatts, Plaintiff voluntarily withdrew its privilege challenge in the state court action (CL18-220). By Order dated October 29, 2018, Judge Yeatts confirmed Plaintiff's withdraw of his challenge, and ruled that Centra's privilege under Virginia Code § 8.01-581.17, which "include proceedings, minutes, records,

reports, analyses, findings, conclusions, recommendations and deliberative processes" of the PEC Group, "and oral and written communications originating in or provided to the PEC Group, will be honored by the parties until such time in the future that the Court may rule upon the issue." *See* (Dkt. 52-2) (J. Yeatts' Oct. 29, 2018 Order). At the joint request of the parties, this Court has incorporated Judge Yeatts' October 29, 2018 Order into this action. (Dkt. 56).

On April 23, 2019, Plaintiff voluntarily nonsuited the predecessor state court action (CL18-220). On August 15, 2019, more than two years after this saga began, Plaintiff filed this federal action purporting to repackage her state court medical malpractice action as a constitutional violation resulting from an unidentified and non-existent policy or custom of Centra. Centra has moved to dismiss all of Plaintiff's claims against Centra other than Plaintiff's claim for medical malpractice. Centra's motion to dismiss has been heard and the parties are awaiting the ruling from Judge Moon.

Almost two years have passed since Plaintiff withdrew his challenge to Centra's statutory privilege under Virginia Code § 8.01-581.17. Judge Yeatts confirmed Plaintiff's withdraw of his challenge and ruled that Centra's privilege under Virginia Code § 8.01-581.17, which "include proceedings, minutes, records, reports, analyses, findings, conclusions, recommendations and deliberative processes" of the PEC Group, "and oral and written communications originating in or provided to the PEC Group, will be honored by the parties until such time in the future that the Court may rule upon the issue." And that Order has been incorporated in this action. (Dkt. 56).

At all relevant times during the predecessor state court action (CL18-220) and this action, Centra asserted its statutory privilege under Virginia Code § 8.01-581.17, preventing the disclosure or discovery of the proceedings, minutes, records and reports of the PEC Group, together with all communications, both oral and written, originating in or provided to the PEC Group. Plaintiff now

seeks to reverse course, hoping for a different outcome on the privilege determination than he expected following first, in-person hearing on the issue before Judge Yeatts.

## FACTS

Centra with approval from its senior management and in partnership and collaboration with Horizon Behavioral Health ("Horizon") and the Lynchburg Police Department's Lynchburg-Central Virginia Crisis Intervention Team ("CIT") formed a group to design, develop and operate a new psychiatric emergency center to fulfill an unmet community need and provide improved mental health services. Styker Aff. ¶¶ 4, 6; Meadows Aff. ¶¶ 2, 4-6. The PEC Group consisted of several teams, including clinical program, design, patient flow, security and financial, all of which reported to Ted Stryker as group leader. Stryker Aff. ¶ 6.

Plaintiff's deposed Ted Stryker, who until 2019 served as Centra's President of Mental Health, Senior Care, and Rehabilitation Services. Stryker Dep. at 10:1-3, 16:2-8. Mr. Stryker explained that early in the PEC creation process, Centra formed an internal group—prior to entering into any agreement with the CIT Advisory Committee—to develop the PEC at Centra. *Id*. at 40:7-20. Mr. Stryker explained that the idea of a PEC was submitted to Centra leadership as part of a management plan. *Id*. at 40:22-41:7. Senior leadership at Centra approved the plan, thereby allowing a Centra PEC group to expend resources toward creating and developing the PEC. *Id*. at 41:4-7. The PEC group at Centra worked with the Central Virginia CIT program to get feedback and input into policies and procedures for the PEC. *Id*. at 45:1-12. However, "the responsibility for developing, designing, running and operating the PEC was solely the responsibility of Centra." *Id*. at 45:17-20. The internal Centra PEC group was comprised of safety and security professionals, mental health providers, emergency department representatives, and

Centra leadership. *Id*. at 66:19-23. Mr. Stryker confirmed that he organized this group to design, develop and operate the PEC. *Id*. at 78:12-15.

Plaintiff also deposed Centra's former Director of Adult Mental Health Services at Centra, Gina Meadows. Ms. Meadows served in that capacity from Fall of 2014 to April of 2016 and during that time, played a major role in the design and development of the PEC. Meadows Dep. at 11:22-12:3. Like Mr. Stryker, Ms. Meadows explained that the genesis of the PEC arose from discussions amongst Centra Health leadership that recognized a need for emergency psychiatric treatment in Lynchburg. *Id.* at 20:24-21:11. Once Centra mental health leaders secured funding, the PEC group moved forward with design and construction of the PEC. *Id.* at 23:11-24:8.

The Centra Executive Team approved the PEC project in 2014. *Id.* at 23:24-24:2. After the project's approval, Ms. Meadows took on the position of Adult Mental Health Coordinator. *Id.* at 24:3-8. Ms. Meadows explained that as she began hiring and developing PEC staff within Centra, she continued to work with external groups like Horizon and CIT. *Id.* at 27:2-20. Ms. Meadows confirmed that within Centra, she regularly met with the PEC committee organized and led by Ted Stryker. *Id.* at 52:9-15. While some aspects of the project were discussed publicly with partners like Horizon and the LPD, certain PEC meetings were confidential. *Id.* at 63:6-8. During these meetings, PEC organizers expressed different views regarding the organization of the PEC. *Id.* at 63:9-11. This process allowed the PEC group to benefit from the breadth of clinical experience on the PEC committee to improve professional services. *Id.* at 63:9-19. Ms. Meadows explained that a primary purpose of the PEC group was to shorten patient stays. *Id.* at 64:14 -65:1. Further, the PEC committee at Centra regularly discussed the quality of care provided at the PEC. *Id.* at 67:1-7

Finally, Plaintiffs took the deposition of Tim Paul, the CIT coordinator for the Lynchburg Police department who served a key role in forming the Central Virginia CIT program. Paul Dep. at 6:9-12. Mr. Paul served in this role until June of 2015, when he retired, after which he had no involvement with the PEC. *Id.* at 41:11-17. During his deposition, Tim Paul confirmed that : (1) Centra had its own independent team tasked with designing, organizing, and operating the PEC and (2) that in his role as leader of the Central Virginia CIT group, he served as an advisorto the internal Centra PEC group. *Id.* at 28:14-29:16; 46:1-5; 29:2-13, 30:1-14. Mr. Paul confirmed that the CIT Advisory Council that he formed and led consisted of a broad group of members from the Lynchburg Police Department, Horizon Behavioral Health, Centra, Wounded Warriors, the Courts, First Responders, and others. *Id.* at 14:15-19; 41:11-42:3. The Central Virginia CIT Advisory Board began meeting in late 2012 or early 2013. *Id.* at 15:19-25. The Central Virginia CIT Advisory Board formed a subcommittee to begin working on an assessment center for Central Virginia. *Id.* at 17:1-17. Mr. Paul explained that once discussions of the PEC turned from theoretical to reality, Centra took the lead on planning and determining "how they were going to operate that facility." *Id.* at 28:14-29:16; 46:1-5. At that point, Mr. Paul ceased direct input in many of the planning aspects of the PEC: "it was a facility and the property of Centra Health." *Id.* at 28:18-22. Mr. Paul agreed that he had no knowledge of how Centra handled the PEC design and operation internally. *Id.* at 46:11-15. He further agreed that Ted Styrker clearly "has a better understanding of Centra's internal design, development, and operation of the PEC." *Id.* at 55:13-19. Mr. Paul continued to consult with the Centra team about how the PEC would operate, (*id.* at 29:2-13), and was invited to and did tour the PEC as a consultant in his capacity as CIT coordinator. *Id.* at 30:1-14.

The PEC Group and its teams functioned primarily to review, evaluate and make recommendations on (a) the duration of patient stays, (b) furnishing of professional services and their medical and psychological necessity, (c) promoting the most efficient use and monitoring the quality of care, (d) the adequacy and quality of professional services, and (e) patient safety in connection with the design, development and operation of the PEC.  Stryker Aff. at ¶¶ 7-8; Meadows Aff. at ¶¶ 5-6.

The PEC Group was referred to as the "PEC group" and the "PEC committee."  PEC Group meetings were held on a regular basis from mid-2012 through early 2016. Stryker Aff. at ¶ 10; Meadows at ¶¶ 2-3.  The PEC Group recorded and circulated minutes or notes for many of its meetings identifying the attendees, summarizing the proceedings, and providing recaps of discussions and lists of action items to be completed.  Stryker Aff. at ¶¶ 7-8; Meadows Aff. at ¶ 8.  In addition to proceedings, minutes and records, the PEC Group also generated reports including a PEC Operations Plan and a PEC Strategic Plan, as well as presentations and other submissions to Centra management.  Stryker Aff. at ¶¶ 7-8; Meadows Aff. at ¶ 8.

Through the efforts of the PEC Group, the PEC was established as an extension of the LGH Emergency Department ("ED") to care for patients experiencing mental health issues in a new therapeutic, secure and private facility thereby (a) addressing length of patient stays through increased capacity, (b) improving access to psychiatric emergency services, (c) providing more efficient patient care, (d) fulfilling an unmet community need and enhancing the quality of professional services through the public/private partnership and collaboration with Horizon and CIT, and (e) providing a therapeutic, secure and private environment for mental health patients. Stryker Aff. at ¶ 8; Meadows Aff. at ¶ 6.

Through the efforts of the PEC Group, the PEC was designed and developed and commenced operations. Centra announced the opening of the PEC at a ceremony with Horizon and CIT on September 24, 2015, and began caring for patients at the PEC in early November 2015. Stryker Aff. at ¶ 13; Meadows Aff. at ¶ 9. After the PEC opened, the PEC Group continued to hold regular meetings through early 2016. Stryker Aff. at ¶ 13; Meadows Aff. at ¶ 9.

## LEGAL ANALYSIS

Virginia Code § 8.01-581.17 entitled "Privileged communications of certain committees and entities" provides in pertinent part: "**The proceedings, minutes, records, and reports of any … committee**, board, **group**, commission, **or other entity as specified in § 8.01-581.16** … **together with all communications, both oral and written, originating in or provided to such committees or entities, are privileged communications which may not be disclosed or obtained by legal discovery proceedings** unless a circuit court, after a hearing and for good cause arising from extraordinary circumstances being shown, orders the disclosure of such proceedings, minutes, records, reports, or communications." Va. Code § 8.01-581.17(B) (emphasis added).

A committee, group or other entity qualifies under Virginia Code § 8.01-581.16 if it "functions primarily to review, evaluate, or make recommendations on (i) the duration of patient stays in health care facilities; (ii) the professional services furnished with respect to the medical, dental, psychological, podiatric, chiropractic, veterinary, or optometric necessity for such services; (iii) the purpose of promoting the most efficient use or monitoring the quality of care of available health care facilities and services, or of emergency medical services agencies and services; (iv) the adequacy or quality of professional services; (v) the competency and qualifications for professional staff privileges; (vi) the reasonableness or appropriateness of charges made by or on behalf of health care facilities; (vii) patient safety, including entering into contracts with patient

safety organizations, provided that such committee, board, group, commission, or other entity has been … established and duly constituted by one or more public or licensed private hospitals."

The PEC Group plainly qualifies as a committee, group or other entity as specified in Virginia Code § 8.01-581.16, and therefore its proceedings, minutes, records and reports, together with all communications, both oral and written, originating in or provided to the PEC Group are privileged and cannot be disclosed or discovered under Virginia Code § 8.01-581.17.

The Virginia General Assembly's directive is clear: because the PEC Group "functions primarily to review, evaluate, or make recommendations on" one or more of the identified topics and was "established and duly constituted by" Centra, its "proceedings, minutes, records and reports, … together with all communications, both oral and written, originating in or provided to [the PEC Group] are privileged communications which may not be disclosed or obtained by legal discovery proceedings." Va. Code § 8.01-581.17. The Virginia General Assembly, therefore, mandates that the PEC Group's "proceedings, minutes, records, reports, analysis, findings, conclusions, recommendations, and deliberative process … are privileged in their entirety, and are not discoverable." Va. Code § 8.01-581.17.

As the Affidavits, exhibits and depositions confirm, the PEC Group:  (1) functioned primarily to review, evaluate and made recommendations on the statutorily identified topics; and (2) was established and duly constituted by Centra.  While a group need only function primarily (50.01%) to qualify, the PEC Group functioned *entirely* for this purpose.  Reviewing, evaluating and making recommendations on these topics was not just a primary function, it was the PEC Group's *raison d'être*.

The PEC Group's PowerPoint presented to the Centra Senior Executive Committee that was used to secure approval, authorization and funding on July 1, 2014, specifically addresses,

reviews, evaluates and make recommendations on: (1) the duration of patient stays, (2) furnishing of professional services and their medical and psychological necessity, (3) promoting the most efficient use and monitoring the quality of care, (4) the adequacy and quality of professional services, and (5) patient safety in connection with the design, development and operation of the PEC. Stryker Aff. at Ex. 13.

The evidence also clearly shows that the PEC Group was established and duly constituted by Centra. Stryker Dep. at 40:22-41:7; Meadows Dep. at 23:24-24:2; Stryker Aff. at ¶¶ 5-6; Meadows Aff. at ¶ 4. Centra Senior Management specifically approved and authorized the PEC Group. Stryker Dep. at 40:22-41:7; Meadows Dep. at 23:24-24:2; Stryker Aff. at ¶¶ 5-6; Meadows Aff. at ¶ 4. As Stryker's testimony and exhibits confirm, Stryker, in his capacity as the PEC Group leader, secured approval and authorization from Centra Senior Management at every step from conception to closure. *See, e.g.,* Stryker Aff. at ¶¶ 5-6, Exs. 14, 23; Stryker Dep. at 44:4-10, 47:2-8, 68:8-14, 79:1-8. Centra Senior Management approved and authorized the formation of the PEC Group and its design, development and operation of a new psychiatric emergency center to fulfill an unmet community need and provide improved mental health services. *Id.* On multiple occasions over several years, Centra Senior Management specifically approved and authorized the PEC Group and its operations and activities, including its creation, its collaboration with Horizon and the CIT, and its proposed PEC facility. Stryker Aff. at Exs. 14, 23. Centra Senior Management also put its money where its mouth is by not only approving and authorizing, but also funding the PEC Group and its design, development and operation of the PEC. *Id.*

As the Supreme Court of Virginia and this Court have both recognized, "[t]he obvious legislative intent" of § 8.01–581.17 is "to promote open and frank discussion" to further "the overall goal of improvement of the health care system." (Dkt. 62 at 2) (Order quoting *HCA Health*

*Services of Virginia, Inc. v. Levin*, 260 Va. 215, 220, 530 S.E.2d 417, 420 (2000) and citing *Fleming v. Mountain States Health All.*, 2012 WL 1909343, at *3 (W.D. Va. 2012)). Protecting "all communications, both oral and written, originating in or provided to" the PEC Group and its "proceedings, minutes, records, reports, analysis, findings, conclusions, recommendations, and deliberative process" indisputably furthers this laudable purpose. Va. Code § 8.01-581.17. These communications and "documents fulfill the statute's requirements." (Dkt. 62 at 2). Thus, they "are privileged in their entirety, and are not discoverable." Va. Code § 8.01-581.17.

From mid-2012 through early 2016, the PEC Group and its members and teams regularly met, communicated and engaged in "open and frank discussion" to design, develop and operate a better PEC and thereby further the "goal of improvement of the health care system." (Dkt. 62 at 2). As Meadows' testimony confirms, the PEC Group and its members and teams regularly engaged in open debate, discussion and deliberation while reviewing, evaluating and making recommendations on the statutorily identified topics and the freedom to express and explore differing ideas and viewpoints is critical to designing, developing and operating a better PEC and improving the health care system. Meadows Aff. at ¶¶ 5-6; Meadows Dep. at 63:6-67:2.

This conclusion is indisputable and plainly aligns with the intent of the General Assembly as expressed in Va. Code § 8.01-581.17. The undisputed evidence confirms that the PEC Group: (1) functioned primarily (and, in fact, *entirely*) to review, evaluate and made recommendations on the statutorily identified topics; (2) was established and duly constituted by Centra; and (3) regularly engaged in open debate, discussion and deliberation to design, develop and operate a better PEC and thereby improve the health care system. Plaintiff has no evidence to the contrary.

Unable to offer any evidence or legal authorities to challenge Centra's statutory privilege under Virginia Code § 8.01-581.17, Plaintiff instead resorts to mischaracterizing the plain

language of the statute. During hearings and in its filings, Plaintiff refers to Virginia Code § 8.01-581.17 as the peer review privilege to suggest that "peer review" is its sole application. Plaintiff is wrong and his argument contradicts the plain language of the statute. Although a peer review committee is but one example of a qualifying group, committee or other entity under Virginia Code § 8.01-581.16, the statute is not narrowly drafted or limited to peer review committies. In fact, it captures "**any** … committee, board, group, commission or other entity as specified in § 8.01-581.16" Va. Code § 8.01-581.17(B). While a peer review committee is one such committee, there are many others, including in this case, the PEC Group. Va. Code § 8.01-581.17(B) (identifying a "peer review committee" as one of many examples of a qualifying group, committee or other entity and mandating that the communications of and to "**any** … committee, board, group, commission or other entity as specified in § 8.01-581.16" are privileged). Plaintiff's efforts to rewrite the statute to limit the privilege to peer review committees is not only unavailing, it directly contravenes the General Assembly's plainly expressed intent to capture "any … committee, board, group, commission or other entity." *Id.*

In an attempt to further distract from his lack of evidence or legal authorities, Plaintiff claims that Centra's assertion of its statutory privilege under Virginia Code § 8.01-581.17 is unprecedented and resorts to an specious parade of horribles arguments. *See* (Dkt. 54 at 3-4) (erroneously claiming that "Centra asserts that basically everything having to do with the PEC is privileged," and that Centra's privilege "is avant garde" and "has not been recognized by any other court" and "would threaten to create a sort of privilege black hole"). Plaintiff's claims concerning Centra's statutory privilege are untrue and his parade of horribles is specious and unavailing.

Centra's privilege is a well-recognized and established matter of Virginia statutory law under Virginia Code § 8.01-581.17. The General Assembly enacted this privilege, its intent,

purpose and language is clear, and Courts have not and should not hesitate to enforce it pursuant to its terms. Indeed, the Supreme Court of Virginia has explained the importance of protecting documents and communications originating in or provided to hospital groups or committees under Virginia Code § 8.01-581.16, such as those at issue here. *See HCA Health Services of Virginia, Inc. v. Levin*, 260 Va. 215, 220, 530 S.E.2d 417 (2000) ("The obvious legislative intent is to promote open and frank discussion during the peer review process among health care providers in furtherance of the overall goal of improvement of the health care system.").

Centra's privilege under Virginia Code § 8.01-581.17 has a long history of being applied in a variety of contexts. *See Head v. Inova Health Care Servs.*, 55 Va. Cir. 43 (Fairfax 2001) (following the "numerous Circuit Court decisions that have read § 8.01-581.17 broadly"); *Mejia-Arevalo v. Inova Health Care Servs.*, 77 Va. Cir. 43 (Fairfax 2008) (finding documents were privileged from disclosure because they were the end result of the self-examination that the legislature intended to promote through Virginia Code § 8.01- 581.17); *Mangano v. Kavanaugh*, 30 Va. Cir. 66 (Loudoun 1993) ("This Court believes … that such policy manuals are encompassed by the privilege under § 8.01-581.17. Such manuals, while they may be the end-product of confidential proceedings, are still communications originating from a committee whose function it is to review, evaluate, or make recommendations on health care facilities and services."); *Riordan v. Fairfax Hosp. Sys.*, Inc., 28 Va. Cir. 560 (Fairfax 1988) (Virginia Code § 8.01-581.17 applies to hospital manuals); *Francis v. McEntee*, 10 Va. Cir. 126 (Henrico 1987) ("Health care providers should be encouraged to adopt policy and procedures which will provide the public with the highest degree of care recognized by the medical and scientific communities at any given time.").

Even those courts that take a narrower view of the privilege under Virginia Code § 8.01-581.17 and decline to apply it to policies and procedures published *at the conclusion* of a deliberative process, have nonetheless applied the privilege to all documents, communications and dialogue during the deliberative process. Under *all* of these authorities, "the proceedings, minutes, records, and reports of" the PEC Group "together with all communications, both oral and written, originating in or provided to [the PEC Group], are privileged communications which may not be disclosed or obtained by legal discovery proceedings." Code § 8.01-581.17(B). Simply stated, *all* documents and communications of or to the PEC Group plainly fall within the statutory privilege. In contrast to end result policies, procedures and protocols, discovery of these documents or communications of or to the PEC Group would "threaten open discussion and debate" within such hospital groups or committees and undermine the General Assembly's intent. *See Fleming*, 2012 WL 1909343, at *3 (finding "that the Virginia General Assembly, in enacting this quality assurance privilege, intended to promote open and frank discussion during the peer review process among health care providers with the ultimate goal of improving the quality of health care"). Thus, the privilege plainly applies to the PEC Group and all proceedings, minutes, records and reports of the PEC Group, together with all communications, both oral and written, originating in or provided to the PEC Group.

By his own admission, Plaintiff does not seek the end result (published policies and procedures governing the PEC), but rather that which is most fundamentally privileged: the communications, analysis, findings, conclusions, recommendations, and deliberative process of the PEC Group that designed, developed and operated the PEC. These documents and communications "are privileged in their entirety, and are not discoverable." Va. Code § 8.01-581.17(B).

The exhibits to the Stryker and Meadows Affidavits further confirm and solidify the existence and legitimacy of Centra's statutory privilege under Virginia Code § 8.01-581.17. These contemporaneous records show what actually happened. They confirm the PEC Group's formation, existence and operations, its regular meetings and activities, its membership, and the purposes for which it was formed, existed and operated from mid-2012 through early 2016. All of this occurred and was in place long before Plaintiff attempted to steal a pistol, stole and fired a taser, and violently attacked and endangered everyone at the PEC on January 11, 2016.

These exhibits together with the Affidavits and deposition testimony confirm that Centra's statutory privilege under Virginia Code § 8.01-581.17, is real and supported by substantial documentation dating back years before Plaintiff's incident at the PEC on January 11, 2016. Plaintiff's efforts to attack Centra's PEC Group privilege is nothing more than a facial attack on the plainly expressed statutory policy and intent of the General Assembly. While such an attack may be appropriately directed to the General Assembly and future legislation, it is not appropriately directed to a court charged with enforcing the statutory policy and intent of the General Assembly set forth in Virginia Code 8.01-581.16 -.17.

In short, the testimony and exhibits before this Court refute any false suggestion by Plaintiff that this privilege was created after-the-fact. The PEC Group had been formed and was existing and operating all along, in line with the General Assembly's statutory purpose. This evidence confirms the qualification of the PEC Group under Virginia Code § 8.01-581.16 and the existence of the privilege under Virginia Code § 8.01-581.17.

## **PLAINTIFF SEEKS TO UNDERMINE THE POLICY UNDERLYING § 8.01-581.17.**

Concerns regarding Plaintiff's attempt to circumvent Virginia Code § 8.01-581.17 are amplified as the materials sought—communications and records made by the PEC Group in

organizing, developing, designing, and enacting the PEC — align squarely with what the General Assembly deemed critical to promote open and frank discussion by those making decisions about the provision of healthcare. With this concern in mind, Virginia courts confronted with similar issues have repeatedly upheld the intent of statute: to promote open and frank discussions amongst those tasked with making important decisions regarding the case and treatment of patients in Virginia.

"In enacting § 8.01-581.17, Virginia Assembly recognized that in order to achieve this goal [of providing the public with the highest degree of medical care] there must be open and frank discussions 'where criticisms are actually encouraged and mistakes or deficiencies aggressively exposed' . . Thus, it is this the Court's opinion that the intent of the legislators in enacting § 8.01–581.17 was to afford the utmost protection to such communications and thus make them privileged from the discovery process." *Mangano v. Kavanaugh*, 30 Va. Cir. 66, 1993 WL 945920, *2 (Loudon Co. 1993) (upholding defendant's assertion of § 8.01-581.17). "By the enactment of this code section, the Virginia General Assembly has clearly made a public policy decision that it is in the best interest of the public to foster unrestrained dialogue among board, staffs and committees of health care providers. Health care providers should be encouraged to adopt policies and procedures which will provide the public with the highest degree of care recognized by the medical and scientific communities at any given time. . . In the Court's opinion, however, the provisions of 8.01-518.17 should not be read so narrowly as to undermine the purposes of the statute. *Francis v. McEntee*, 10 Va. Cir. 126, 1987 WL 488805,*2 (Henrico Co. 1987); see also *Colston v. Johnston Mem'l Hosp*., 49 Va. Cir. 540, 1998 WL 34169941 at *1 (Washington Co.).  1998) "[T]o restrict the privilege, as [defendant] urges and as the trial court ruled, ignores the underlying purpose of the statute. The obvious legislative intent is to promote open and frank discussion during the peer

review process among health care providers in furtherance of the overall goal of improvement of the health care system. If peer review information were not confidential, there would be little incentive to participate in the process." *HCA Health Servs. of Virginia, Inc. v. Levin*, 260 Va. 215, 220–21, 530 S.E.2d 417, 420 (2000).

Despite the fact the policy underlying § 8.01-581.17 is obvious and oft-repeated by Virginia Courts, Plaintiff seeks to turn the statute on its head, undercutting health care-providers' ability to have open discussions about the best way to treat patients and the deliberative process § 8.01-581.17 seeks to promote. Centra organized a PEC Group to glean the best way to treat those experiencing psychiatric emergencies and to put into action a facility that could care such patients. The discussions, correspondence and other decisions that went into decisions about the facility go to the heart of § 8.01-581.17 and the disclosure of such materials will undoubtedly limit the medical communities' ability to have frank discussions about important and difficult issues. Unlike other cases in which the Court engaged in a broad reading to protect the policy underlying § 8.01-581.17, the materials at issue before this court go to the very heart of the statute. Allowing Plaintiffs to access and weaponize the deliberative process that gave rise to the PEC will undoubtedly have a chilling effect on the extent of communication and correspondence among healthcare professionals tasked with developing new and innovative medical facilities across Virginia.

## CONCLUSION

For the foregoing reasons, Centra respectfully requests that the Court recognize the PEC Group privilege under Virginia Code § 8.01-581.17 and find that the statutory privilege applies to the PEC Group and all proceedings, minutes, records and reports of the PEC Group, together with all communications, both oral and written, originating in or provided to the PEC Group.

Dated: October 23, 2020				Respectfully Submitted,

						CENTRA HEALTH, INC


						By: /s/ Joshua F. P. Long.
						       Of Counsel

Elizabeth Guilbert Perrow, Esq. (VSB No. 42820)
Daniel T. Sarrell, Esq. (VSB No. 77707)
Joshua F. P. Long, Esq. (VSB No. 65684)
Joshua R. Treece, Esq. (VSB No. 79149)
J. Walton Milam III, Esq. (VSB No. 89406)
WOODS ROGERS PLC
P. O. Box 14125
Roanoke, VA 24038-4125
Phone: (540) 983-7600
Fax: (540) 983-7711
eperrow@woodsrogers.com
dsarrell@woodsrogers.com
jlong@woodsrogers.com
jtreece@woodsrogers.com
wmilam@woodsrogers.com

*Counsel for Defendant Centra Health, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 23rd day of October, 2020, a true and accurate copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notice to all counsel of record:

/s/ Joshua F. P. Long