# IN THE U.S. DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

| | |
|---|---|
| **RUTH ANN WARNER, as Guardian of** ) | |
| **JONATHAN JAMES BREWSTER WARNER** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | Case No. 6:19CV00055 |
| ) | |
| **CENTRA HEALTH, INC., et al.** ) | |
| ) | |
| **Defendants** ) | |

### CENTRA HEALTH, INC.'S BRIEF IN SUPPORT OF MOTION TO ENFORCE COURT ORDER AND REQUIRE WARNER SIBLINGS TO REVIEW ALL DEVICES AND PRODUCE ALL RESPONSIVE COMMUNICATIONS AND DOCUMENTS

Defendant Centra Health Inc. ("Centra") moves the Court to enforce its Order dated August 19, 2020, incorporating into this Action Orders and Discovery from Nonsuited State Court Action CL18-220, including the Order dated November 2, 2018 (the "Electronic Device Order") (ECF No. 56 Exhibit C) attached hereto as **Exhibit 1**. Daniel Warner, Stephen Warner, Joshua Warner, Victoria Warner, Loveleelou Warner, James Warner and Philip Warner (the "Warner Siblings") have not complied with the Court. Centra requests that the Court enforce the Electronic Device Order and require the Warner Siblings' compliance.

### FACTUAL BACKGROUND & PROCEDURAL HISTORY

On January 11, 2016, Jonathan Warner attacked and endangered other patients and staff at Centra's Psychiatric Emergency Center ("PEC") at Lynchburg General Hospital ("LGH"). Jonathan Warner attacked Centra security officer Wes Gillespie ("Gillespie") and attempted to steal Gillespie's pistol. Jonathan Warner stole and fired Gillespie's taser hitting Centra mental health safety support officer Jason Bryan ("Bryan"). Jonathan Warner then aimed the stolen taser

at Gillespie and ran towards Gillespie. Gillespie warned Jonathan Warner to "Stop, drop it!" but Jonathan Warner disregarded Gillespie's warning and continued charging full speed at Gillespie. Acting in self-defense and in defense of others, Gillespie shot Jonathan Warner. Gillespie fired his pistol four times in "rapid succession" all within less than five seconds. Warner suffered injuries. A security camera in the PEC recorded the incident. Following the incident, the Commonwealth Attorney reviewed the matter and determined that charges were unwarranted.

Later that same day on January 11, 2016, Plaintiff's counsel Paul Valois appeared at Centra's Lynchburg General Hospital claiming to represent the Warner family. At all times since January 11, 2016, the Warner Siblings and their counsel have been aware of their duty to preserve all potentially relevant documents and information.

On January 15, 2016, Plaintiff's counsel Paul Valois identified himself as the Warner "family's attorney" sent out a press release about the incident asking questions on behalf of the Warner family.

Later that same day on January 15, 2016, Ruth Ann Warner and two of the Warner Siblings were interviewed about the incident by WSET ABC News 13. The news report also presented quotes from Plaintiff's counsel Paul Valois identified as the Warner "family's attorney." https://wset.com/news/local/mothers-video-response-to-hospital-shooting

On August 7, 2017, Plaintiff filed State Court Action CL18-220 against Centra. Seeking to avoid responsibility for Jonathan Warner's own actions (which were illegal, intentional, reckless or negligent and proximately caused his injuries), Plaintiff alleged in State Court Action CL18-220 and continues to allege in this Action that "a[t] the time of the incident complained of herein, Jonathan was not of sound mind." Amended Complaint ¶ 33 (ECF No. 92). Plaintiff further alleges that Jonathan Warner's allegedly unsound mind at the time of the incident was the result

of his failure to take his prescribed medications claiming that "[b]efore the injuries he suffered as a result of [the incident], when he was properly medicated, he was able to live a happy life at his mother's home." *Id.* at ¶ 46. Through Plaintiff's own allegations, Jonathan Warner has put his mental state at the time of and before and after the incident squarely at issue.

While the situation is unfortunate, Centra believes it acted appropriately under the circumstances and that Plaintiff's claims have no merit. Centra has a number of defenses including, among others, that Centra, Dr. Dunlop and Dr. Judd met the applicable standard of care in treating Jonathan Warner, that Centra and Gillespie acted reasonably under the circumstances and in self-defense and in defense of others in restraining Jonathan Warner, that Jonathan Warner was contributorily negligent, his actions were illegal, he was not legally insane and thus responsible for his own actions, and he proximately caused his own injuries. Jonathan Warner's mental state is central to many of Centra's defense of the case. Even if Plaintiff could prove a violation of the standard of care or use of excessive force (which she cannot), Plaintiff still cannot meet her heavy burden of proving Jonathan Warner was legally insane and thus not responsible for his own actions in the PEC on January 11, 2016 that otherwise defeat her claims.

On January 31, 2018, Centra sent a letter to counsel for the Warner family Paul Valois attached hereto as **Exhibit 2** reminding Jonathan Warner, Ruth Ann Warner and the Warner Siblings of their preservation obligations and the vital importance of emails, text messages, calendar entries, task list entries, pictures, videos, social media or other information contained on mobile phones, tablets, computers and other devices belonging to or used by any of them. To ensure and facilitate the preservation of this information, Centra identified the mobile phones numbers of which it was aware for Jonathan Warner, Ruth Ann Warner and the Warner Siblings.

On November 2, 2018, Lynchburg Circuit Court Judge Yeatts entered the Electronic Device Order in State Court Action CL18-220. Pursuant to Paragraph 3 of the Electronic Device Order, each of the Warner Siblings is required to: (1) "review the entire contents of all mobile phones, tablets, desktop and laptop computers, pagers and other electronic devices that any of them have owned or used at any time from December 1, 2015 to present (the "Warner Sibling Devices");" and (2) produce (a) all communications between Jonathan Warner and any of the Warner Siblings from December 1, 2015 to January 31, 2016; (b) all communications between Ruth Ann Warner and any of the Warner Siblings from December 1, 2015 to January 31, 2016; and (c) all non-privileged communications to or from any of the Warner Siblings, documents created, generated, or possessed by any of the Warner Siblings, and all contents of all of the Warner Sibling Devices that refer or relate to (i) Jonathan Warner's mental state at any time between December 1, 2015 and January 31, 2016, irrespective of the date when the communication was made, (ii) Centra, (iii) this lawsuit, (iv) the shooting incident or any other events on January 10-11, 2016, or (v) the trip to Florida in December of 2015, or (vi) that discuss or question Jonathan Warner's mental health diagnoses or sanity or suggest that Jonathan Warner may not be insane." See **Exhibit 1**.

Shortly after the entry of the Electronic Device Order Plaintiff's counsel advised Centra on January 18, 2019 that Plaintiff intended to non-suit State Court Action CL18-220 and several other related state court actions that Plaintiff had filed against Centra and others relating to this incident, including CL18-151 and CL18-152 in Richmond City Circuit Court. Plaintiff and Centra then negotiated the parameters of the non-suit. Centra agreed to Plaintiff's non-suiting of these multiple cases pursuant to Virginia Code § 8.01-380 on the conditions that: (1) if Plaintiff chooses to refile, she will refile all available claims in one consolidated proceeding in Lynchburg, Virginia; and (2)

to the extent a new case is filed, Plaintiff and Centra will request and consent to the entry of an order in the newly filed action (this Action) incorporating discovery, motions, objections and orders from State Court Action CL18-220. After memorializing this agreement, Plaintiff dismissed all of these state court lawsuits. Ultimately, after a lengthy delay during which no lawsuit was pending, Plaintiff refiled one consolidated proceeding in the Western District of Virginia, Lynchburg Division (this Action).

On August 15, 2019, Plaintiff refiled this Action against Centra and others in this Court. Complaint (ECF No. 1). As reflected in their Rule 26(f) Report dated January 15, 2020, the parties agreed that discovery would be delayed until after Defendants' pending Rule 12(b)(6) motions to dismiss were heard. (ECF No. 37 ¶ 3). On March 19, 2020, the Court held a hearing on Defendants' motions to dismiss. (ECF No. 42).

On August 19, 2020, the Court entered its Order incorporating into this Action Orders and Discovery from Nonsuited State Court Action CL18-220, including Electronic Device Order attached as **Exhibit 1**.

On August 24, 2020, the Court held a hearing where it was decided that the parties would conduct limited discovery on and then present for determination Centra's PEC Group privilege. (ECF No. 58). From August 2020 through November 2020, the parties conducted limited discovery on and briefed Centra's PEC Group privilege (ECF Nos. 59-79). On November 17, 2020, the Court held a hearing on the applicability of Centra's PEC Group privilege (ECF No. 80).

On November 30, 2020, the Court entered an Order and Memorandum Opinion granting in part Defendants' motions to dismiss. (ECF Nos. 86-87). On December 17, 2020, Plaintiff filed an Amended Complaint (ECF No. 92) and a Motion for Reconsideration of the Court's Order granting in part Defendants' motion to dismiss (ECF Nos. 93-94). On December 21, 2020, the

Court denied Plaintiff's Motion for Reconsideration (ECF No. 96). On December 31, 2020, Defendants' filed their Answers to Plaintiff's Amended Complaint (ECF Nos. 97-98). Following several filings from the parties on the effect of the Court's recent rulings, on January 22, 2021, the Court entered its Order denying as moot Plaintiff's challenge to Centra's PEC Group privilege (ECF No. 104).

On January 12, 2021 (less than 2 weeks after answering the Amended Complaint), Centra sent a letter to the Warner Siblings concerning their non-compliance with the Electronic Device Order. On January 28, 2021, a meet and confer conference was held between counsel for Centra and counsel for Plaintiff and the Warner Siblings to determine which, if any, issues could be resolved between the parties without Court involvement. During this conference, counsel for the Warner Siblings claimed that **<u>none</u>** of them had a **<u>single</u>** communication or document responsive to the Electronic Device Order. Centra advised counsel for the Warner Siblings that it was impossible to believe that **<u>none</u>** of them had **<u>ever</u>** generated, sent or received a **<u>single</u>** text, email, instant message, photo or video about their brother being shot. Centra asked the Warner Siblings to double check and agreed to provide each of them a questionnaire to identify all of their devices, email accounts and mobile phone numbers and confirm that they have made specific searches for all of the required information, including: (a) all of their communications with Jonathan Warner from December 1, 2015 to January 31, 2016, (b) all of their communications with Ruth Ann Warner from December 1, 2015 to January 31, 2016, and (c) all of their documents and communications generated, sent or received and all contents of their devices **<u>at any time</u>** referring or relating to Jonathan Warner's mental state, Centra, the lawsuit, the Florida trip in December 2015, the shooting or the events of January 10-11, 2016. Centra further explained that it needed to receive this information before deposing the Warner Siblings.

On February 3, 2021, Centra emailed counsel for Plaintiff and the Warner Siblings the questionnaire attached hereto as **Exhibit 3** (the "Warner Sibling Electronic Device Verification Form").  After several follow up requests from Centra, on February 22, 2021, counsel for the Warner Siblings responded by claiming that the Electronic Device "Order has been satisfied years ago."  When Centra explained that the Electronic Device Order has not been satisfied because the Warner Siblings have not conducted the required review or produced a single responsive document or communication, on February 23, 2021, counsel for the Warner family responded by trivializing Centra's concerns and acknowledging that the Warner Siblings' responsive documents and communications likely have been spoliated.  In counsel for the Warner family's own words: "There probably were **a ton of text messages** from the relevant period **talking about Jonathan and the shooting**, but cell phones don't last long and Centra waited too long to ask for them. **Those messages are almost certainly gone for good**."  (Emphasis added).

The Warner Siblings' excuses are false.  Centra has been asking the Warner Siblings for these communications and documents since January 2018 (see supra p. 3, **Exhibit 2**) and the Warner Siblings have been represented by counsel and aware of their preservation obligations at all times since the day of the incident on January 11, 2018 (see supra p. 2).  If the Warner Siblings knowingly destroyed or deleted relevant communications or documents (whether to protect their brother or otherwise), there must be consequences.

After this admission of spoliation, on February 26, 2021, counsel for the Warner Siblings sent a follow up email attempting to soften the blow. He claimed that the Warner Siblings "have already satisfied the demands of the order and have produced all responsive communications which **there are none**" and "**they know nothing, and have nothing**."  (Emphasis added).

Again the Warner Siblings' excuses are false.  The Warner Siblings are neck deep in all aspects of this lawsuit.  They have clearly generated, sent and received communications and documents responsive to the Electronic Device Order and possess critical evidence.  On the night of the incident January 10, 2016, several of the Warner Siblings accompanied Jonathan Warner to the LGH Emergency Department (the "ED"), and one of them, Daniel Warner, accompanied Jonathan Warner to the treatment room and answered questions from the ED treating physician Dr. Dunlop.  The next afternoon on January 11, 2016, Paul Valois was identified as counsel for the Warner Siblings.  A few days later on January 15, 2016, two of the Warner Siblings were interviewed about the incident by WSET ABC News 13 (see supra p. 2).  As the Amended Complaint itself makes clear, the Warner Siblings had direct firsthand knowledge of and involvement in all aspects of this incident, including the Warner family trip to Florida in December 2015, that allegedly triggered his deterioration (*Id.* ¶¶ 39-42), the worsening of his symptoms when he returned home (*Id.* ¶¶ 43-44), the family church trip and the decision to take him to Centra for treatment on January 10, 2016 (*Id.* ¶ 45), his trip to and treatment in the Centra ED on January 10, 2016 (*Id.* ¶¶ 48-52), and his injuries from the shooting (*Id.* ¶ 178).

Plaintiff has put Jonathan Warner's mental state squarely at issue by claiming that he was legally insane in an attempt to escape responsibility for his own contributorily negligent and illegal actions in the PEC on January 11, 2016 (see supra p. 2).  Siblings arguably know each other better than anyone.  The Warner Siblings are uniquely positioned to have knowledge and information that informs of their brother's true mental state.  It is also utterly inconceivable, especially in this day and age, that none of the 6 siblings ever once  generated, sent or received a single communication or document referring or relating to Jonathan Warner's mental state, Centra, the

lawsuit, the Florida trip in December 2015, the shooting or the events of January 10-11, 2016. Respectfully, we just don't believe it and submit that no reasonable person would either.

The Warner Siblings also have direct firsthand knowledge of and involvement in Jonathan Warner's post-incident condition and care as well as a financial interest in the outcome of this litigation. As Plaintiff's Petition to Appoint Conservator for Jonathan Warner attached hereto as **Exhibit 4** confirms, the Warner Siblings provided substantial caretaking and, as of March 29, 2017, Jonathan Warner was indebted to the Warner Siblings in the total amount of $81,365:

## EXHIBIT "C"

### APPROXIMATE DEBTS OF JONATHAN WARNER

| CREDITOR | NATURE OF DEBT | AMOUNT DUE |
|---|---|---|
| Daniel Warner | Chief Caretaker | 45,465.00 |
| Victoria Warner | Caretaker | 7,000.00 |
| Phillip Warner | Overnight Caretaker | 7,000.00 |
| James Warner | Overnight Caretaker | 5,000.00 |
| Lovelee Warner | Caretaker | 1,900.00 |
| Joshua Warner | Overnight Caretaker | 15,000.00 |

There is zero chance that the Warner Siblings possess no communications or documents responsive to the Electronic Device Order unless, as their own counsel's correspondence suggests, they spoliated them. The Electronic Device Order is clear. The Warner Siblings must: (1) review the entire contents of all devices they have owned or used at any time since December 1, 2015, including the contents of all emails, text messages, calendar entries, task list entries, pictures, videos, social media or other cloud or web based accounts or backups which are or may be accessible through such devices; and (2) search for, identify and produce all of the required information." Electronic Device Order ¶ 3 Attached as **Exhibit 1**.

## LEGAL ANALYSIS

### I. Enforcing The Electronic Device Order Is Necessary.

As set forth above, there can be no question that the Warner Siblings have failed to comply with the Electronic Device Order. As a result, the Court should enforce the Electronic Device Order and require the Warner Siblings to: (1) review the entire contents of all devices they have owned or used at any time since December 1, 2015; and (2) search for, identify and produce all required information, including: (a) all communications between Jonathan Warner and any of the Warner Siblings from December 1, 2015 to January 31, 2016; (b) all communications between Ruth Ann Warner and any of the Warner Siblings from December 1, 2015 to January 31, 2016; and (c) all communications or documents generated, sent or received by any of the Warner Siblings and all contents of their devices **from any time period** that refer or relate to (i) Jonathan Warner's mental state at any time between December 1, 2015 and January 31, 2016, irrespective of the date when the communication was made, (ii) Centra, (iii) this lawsuit, (iv) the shooting incident or any other events on January 10-11, 2016, or (v) the trip to Florida in December of 2015, or (vi) that discuss or question Jonathan Warner's mental health diagnoses or sanity or suggest that Jonathan Warner may not be insane." Electronic Device Order ¶ 3 Attached as **Exhibit 1**.

### II. Further Relief Is Appropriate To Prevent Harm And Ensure Compliance.

While enforcing the Electronic Device Order is necessary, it may be insufficient, especially if the Warner Siblings have spoliated relevant communications and documents. Under these circumstances, Centra also requests that the Court grant further relief to address the Warner Siblings non-compliance and to prevent harm to Centra.

### A. Standard for Contempt.

When a court enters an Order, compliance is mandatory. *See Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc.*, 2015 U.S. Dist. LEXIS 3207 at *10 (S.D.N.Y. 2015) (*quoting Oral-B Laboratories, Inc. v. Mi-Lor Corp.*, 810 F.2d 20, 24 (2nd Cir. 1987)). Those who fail to comply with an Order are in civil contempt. *See Swimways Corp. v. Tofasco of America, Inc.*, 2009 U.S. Dist. LEXIS 122865, *4-5 (E.D. Va. 2009) (holding defendants in civil contempt for violating the court's order and awarding attorneys' fees); *Axiom Res. Mgmt. v. Alfotech Solutions, LLC*, 2011 U.S. Dist. LEXIS 69451 (E.D. Va. 2011) (holding defendants in civil contempt for violating order and awarding attorneys' fees).

To establish civil contempt, the moving party must demonstrate: (1) the existence of a valid order of which the defendant had actual or constructive knowledge; (2) a showing that the order was in the movant's favor; (3) a showing that the defendant violated the terms of the order and had knowledge of such violations, and (4) a showing that the movant suffered harm as a result. *JTH Tax, Inc. v. Noor*, 2012 U.S. Dist. LEXIS 138657, *5-6, 2012 WL 4473252, *9-12 (E.D. Va. 2012) (*citing Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000)). *See also JTH Tax, Inc. v. H&R Block Tax Servs.*, 359 F.3d 699 (4th Cir. Va. 2004). Although a finding of civil contempt must be established by clear and convincing evidence, "the court need not make a finding that the defendant's actions were willful in order to find him in contempt of court." *Id*.

After a finding of contempt, "the court has broad discretion to fashion an appropriate remedy to coerce compliance." *Id*. "If the court elects to impose a fine, the fine can be either compensatory or coercive," and the fine "is appropriate to impress upon the defendants the need to take all steps necessary to carry out all facets of the Court's order." *Id*.

### B. Centra Satisfies Each Requirement for a Finding of Contempt.

Centra easily satisfies each requirement for a finding of contempt. First, the Warner Siblings at all times have had actual knowledge of the Electronic Device Order. Second, the Electronic Device Order was in Centra's favor. Third, the Warner Siblings have knowingly violated the Electronic Device Order. Finally, Centra is suffering harm as a result. The Warner Siblings are impeding Centra's efforts to challenge Plaintiff's assertion that Jonathan Warner was insane and thus not responsible for his actions in the PEC on January 11, 2016. Moreover, Centra has suffered harm by having to investigate the Warner Siblings' violations of the Electronic Device Order and bring this Motion. *See Swimways*, 2009 U.S. Dist. LEXIS at *11-13 (attorney's fees incurred in bringing contempt motion constitute harm caused by violation of order). Based on the Warner Siblings' violations of the Electronic Device Order as set forth above, all of the above relief, including fines, fees and equitable relief, is appropriate. *JTH Tax, Inc.*, 2012 WL 4473252, *9-12.

### III. Third-Party Imaging of the Warner Sibling Devices Is Appropriate.

Courts routinely provide for a third-party vendor to image electronic devices where the party's production has inconsistencies or there is evidence of potential spoliation. *See, e.g.*, *Procaps S.A.* v. *Patheon Inc.*, 2014 WL 800468, at *3 (S.D. Fla. 2014) (ordering plaintiff to retain a "neutral, third-party forensic examiner" to image plaintiff's electronic devices and collect plaintiff's ESI where there was evidence of potential spoliation); *Orrell* v. *Motorcarparts of Am., Inc.*, 2007 WL 4287750, at *6-8 (W.D.N.C. 2007) (holding defendant was "entitled to conduct a forensic examination" of plaintiff's home computer where plaintiff alleged her home computer "crashed"); *Hardin* v. *Belmont Textile Mach. Co.*, 2007 WL 2300795, at *4-5 (W.D.N.C. 2007) (ordering imaging of a home computer where there were inconsistencies in the evidence produced during discovery); *Antioch Co.* v. *Scrapbook Borders, Inc.*, 210 F.R.D. 645, 652-53 (D. Minn. 2002)

(granting motion to compel and appointing a neutral expert to image computer equipment where data from a defendant's computer was deleted).

Imaging is warranted in this case not only because Warner Siblings' response to subpoenas and the Electronic Device Order has been inadequate - indeed, literally non-existent - in response to Centra's multiple attempts to facilitate compliance, *see Hardin*, 2007 WL 2300795, at *4, but also because counsel for the Warner Siblings has suggested they spoliated evidence.

It is well-established that everyone involved must preserve evidence that may be relevant to that litigation. *See, e.g.*, *Orrell*, 2007 WL 4287750, at *6 (citing *Silvestri* v. *GMC*, 271 F.3d 583, 591 (4th Cir. 2001)). If the Warner Siblings fail to preserve relevant evidence, Centra will unquestionably suffer irreparable harm because a key element of Centra's defense is demonstrating that Jonathan Warner (despite being troubled) is not totally insane and thus is responsible for his own contributorily negligent and illegal actions in the PEC on January 11, 2016. *See Humphrey* v. *Sallie Mae, Inc.*, 2010 WL 2522743, at *1 (D.S.C. 2010) (granting request for expedited discovery on cell phone data where there was a risk of Verizon purging the electronic data, causing plaintiff "irreparable harm").

Here, the facts fully justify the Court's requiring third-party imaging and examination of all of the Warner Sibling Devices. Centra has good cause to believe the Warner Siblings failed to preserve and are likely to destroy (or fail to prevent further destruction of) relevant evidence. Indeed, their own counsel has admitted as much. Importantly, to the extent the Warner Siblings have already deleted relevant communications or documents, imaging may help retrieve the deleted communications or documents, *see, e.g.*, *Orrell*, 2007 WL 4287750, at *6-8 (forensic examination of computer where computer had crashed); *Antioch*, 210 F.R.D. at 652-53 (computer equipment subject to imaging where data was deleted); *Procaps S.A.*, 2014 WL 800468 (forensic examination and attempt to recover deleted files where plaintiff may have spoliated evidence), and help Centra

determine whether and to what extent any communications or documents have been deleted. Moreover, imaging Warner Siblings' electronic devices will ensure they do not delete potentially relevant evidence in the future, thus preventing irreparable harm to Centra. *Cf. Humphrey*, 2010 WL 2522743.

The Court may order electronic devices to be imaged where, as here, the electronic data is a key aspect of the litigation. *See Physicians Interactive*, 2003 WL 23018270, at *10; *Balboa Threadworks*, 2006 WL 763668, at *4. Here, critical evidence is likely contained on the Warner Sibling Devices. The Warner Siblings presumably communicated extensively through electronic means concerning the events of January 10-11, 2016, both contemporaneously and after-the-fact. A brother being shot and seriously injured is a seminal event, the incident has generated substantial media coverage in which the Warner Siblings have actively participated, and it is utterly implausible to think that they never communicated about it with each other, their mother, their brother, their friends or other third parties via written or electronic communications. Nevertheless, despite their use of their mobile phones, tablets and computers to communicate, not one of the Warner Siblings has produced a single text message, email, picture, video, social media post or phone record responsive to the Electronic Device Order. The electronic evidence of such communications is plainly "at issue," *Physicians Interactive*, 2003 WL 23018270, at *10, is "particularly important" here, *Balboa Threadworks*, 2006 WL 763668, at *4, and the Court should order the Warner Siblings to image and produce it.

Imaging of the Warner Sibling Devices also may preserve and maintain critical metadata information. Metadata contains substantial information that is critical in litigation, such as "information describing the history, tracking or management of an electronic file," and may assist in the authentication of documents. *Kleppinger* v. *Tex. Dep't of Transp.*, 2012 WL 12893654, at

\*9 (S.D. Tex. 2012) (quoting Fed. R. Civ. P. 26 advisory committee notes, 2006 Amendment).  It also can provide information such as when and to whom communications were sent. Because there are serious and legitimate concerns of deletion of relevant files, and due to the nature of Plaintiff's claims and Centra' defenses, the use of metadata in this case is vital.  The Warner Siblings have failed to produce any responsive communications or documents, much less any metadata.

### IV.     The Warner Siblings Should Bear The Cost of Imaging Their Own Devices.

Finally, the Warner Siblings should bear the costs of imaging their own devices.  In discovery, "the presumption is that the producing party should bear the cost of responding to properly initiated discovery requests." *TBC, Inc.* v. *DEI Sales, Inc.*, 2017 WL 4151261, at \*7 (D. Md. 2017); *see also Jones* v. *Bank of Am., N.A.*, 2015 WL 1808916, at \*7 (S.D. W. Va. 2015) (producing party required to bear the cost of responding to discovery where there was no "good cause for a reallocation"). Indeed, where a party "could have avoided some of the document collection and production costs if it had **simply complied** with the Rules of Civil Procedure," there is no good cause to reallocate the costs of responding to discovery to the requesting party. *Jones*, 2015 WL 1808916, at \*7 (emphasis added).

### CONCLUSION

For the foregoing reasons, Centra respectfully requests that the Court grant its Motion, enforce the Electronic Device Order and award Centra the requested relief and any other relief the Court deems just and proper.

Dated:  March 9, 2021                        Respectfully Submitted,

                                             CENTRA HEALTH, INC.

                                             By: */s/ J. Walton Milam III*
                                                      Of Counsel

Elizabeth Guilbert Perrow, Esq. (VSB No. 42820)
Daniel T. Sarrell, Esq. (VSB No. 77707)
Joshua F. P. Long, Esq. (VSB No. 65684)
Joshua R. Treece, Esq. (VSB No. 79149)
J. Walton Milam III, Esq. (VSB No. 89406)
WOODS ROGERS PLC
P. O. Box 14125
Roanoke, VA  24038-4125
Phone: (540) 983-7600
Fax: (540) 983-7711
eperrow@woodsrogers.com
dsarrell@woodsrogers.com
jlong@woodsrogers.com
jtreece@woodsrogers.com
wmilam@woodsrogers.com

*Counsel for Centra Health, Inc., Dr. Dunlop and Dr. Judd*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 9th day of March, 2021, a true and accurate copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notice to all counsel of record:

*/s/ J. Walton Milam III*